UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------

KYLE GRANT, individually and on behalf of
other persons similarly situated who were
employed by WARNER MUSIC GROUP
CORP. and ATLANTIC RECORDING
CORPORATION,

               Plaintiff,

          -against-

WARNER MUSIC GROUP CORP., and
ATLANTIC RECORDING CORPORATION,

              Defendants.

------------------------------------------------------

Case No. 13 Civ. 4449 (PGG)


## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR COURT AUTHORIZED NOTICE TO THE PURPORTED COLLECTIVE PURSUANT TO 29 U.S.C. § 216(b)


**VEDDER PRICE P.C.**
Laura Sack
Lyle S. Zuckerman
Michael J. Goettig
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700
*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

FACTS RELEVANT TO § 216(b) ANALYSIS .......................................................... 2

    A.    The Parties and Declarants.............................................................................. 2

    B.    The Sparse Facts Submitted by Plaintiff In Support of His Motion ..................... 4

    C.    Defendants' Internship Programs – Dispersed Throughout Seven Different States – are Separately Managed, and The Experiences of Interns Vary Widely by Subsidiary and Affiliate, Location and Department ........................... 6

ARGUMENT ............................................................................................................. 10

    A.    The Court Should Not Authorize Notice ........................................................ 10

        1.    Legal Standard ........................................................................................ 10

        2.    Plaintiff has Submitted No Evidence of an Unlawful Nationwide Written Policy or Unlawful Nationwide Unwritten Practice .................. 11

            (a)    Allegations of a common (mis)classification are not sufficient ................................................................................. 11

            (b)    Plaintiff submits no probative evidence concerning interns outside of New York ............................................................. 12

            (c)    Plaintiff submits no evidence that he is similarly situated to interns nationwide, or even in New York ................................... 16

            (d)    Plaintiff's reliance upon *Glatt* and *Wang* is misplaced.............. 22

    B.    Plaintiff's Proposed Notice and Opt-In Procedure is Defective ......................... 23

CONCLUSION.......................................................................................................... 25

i

**TABLE OF AUTHORITIES**

**Page**

## Cases

*Ahmed v. T.J. Maxx Corp.*,
    No. 10 Civ. 3609, 2013 WL 2649544 (E.D.N.Y. June 8, 2013) .............................................. 13

*Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433 (E.D. Va. 2002) ...................................... 11

*Berndt v. Cleary Bldg. Corp.*,
    No. 11 Civ. 791, 2013 WL 3287599 (W.D. Wis. Jan. 24, 2013) .............................................. 14

*Bramble v. Wal-Mart Stores, Inc.*,
    No. 09 Civ. 4932, 2011 WL 1389510 (E.D. Pa. Apr. 12, 2011) ........................................ 11, 13

*Chemi v. Champion Mort.*,
    No. 05 Civ. 01238, 2006 WL 454363 (D.N.J. June 19, 2006) ................................................. 19

*Chowdury v. Duane Reade*,
    No. 06 Civ. 2295, 2007 WL 2873929 (S.D.N.Y. Oct. 2, 2007) .............................................. 15

*Clausman v. Nortel Networks, Inc.*,
    No. IP 02-0400, 2003 WL 21314065 (S.D. Ind. May 1, 2003) ............................................... 10

*Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914 (D. Ariz. 2010) .................................................... 10, 12

*Diaz v. Elec. Boutique of Am., Inc.*,
    No. 04 Civ. 0840E, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) .................................... 10, 15

*Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007) ............................ 25

*Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189 (N.D.N.Y. 2009) ................... 23, 25

*Fernandez v. Wells Fargo Bank, NA*,
    12 Civ. 7193, 2013 WL 454052 (S.D.N.Y. Aug. 28, 2013) .................................................... 20

*Glatt v. Fox Searchlight Pictures, Inc.*, 293 F.R.D. 516 (S.D.N.Y. 2013) ............................. 17, 22

*Gordon v. Kaleida Health*,
    No. 08 Civ. 378S, 2009 WL 3334784 (W.D.N.Y. Oct. 14, 2009) ...................................... 24, 25

*Guillen v. Marshalls of MA, Inc.* ("*Guillen I*"), 750 F. Supp. 2d 469 (S.D.N.Y. 2010) ......... 10, 16

*Guillen v. Marshalls of MA, Inc.* ("*Guillen II*"),
    No. 09 Civ. 9575, 2012 WL 2588771 (S.D.N.Y. July 2, 2012) .............................................. 11

*Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340 (E.D.N.Y. 2012) ................... 24

*Guzman v. VLM, Inc.*, No. 07 Civ. 1126, 2007 WL 2994278 (E.D.N.Y. Oct. 11, 2007)............. 16

*Hintergerger v. Catholic Health Sys.*,
  No. 08 Civ. 380S, 2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009) ...................................... 24, 25

*Hoffman v. Sbarro, Inc.,* 982 F. Supp. 249 (S.D.N.Y. 1997) ....................................................... 10

*Hoffman-LaRoche v. Sperling*, 493 U.S. 165  (1989) ................................................................. 10

*Ikikhueme v. CulinArt, Inc.*,
  No. 13 Civ. 293, 2013 WL 2395020 (S.D.N.Y. June 3, 2013) ..........................................*passim*

*In re Wells Fargo Home Mort.*, 571 F.3d 953  (9th Cir. 2009) .................................................... 12

*Indergit v. Rite Aid Corp.*,
  No. 08 Civ. 11364, 2010 WL 2465488 (S.D.N.Y. June 16, 2010) .......................................... 15

*Khan v. Airport Mgmt. Servs., LLC*,
  No. 10 Civ. 7735, 2011 WL 5597371(S.D.N.Y. Nov. 16, 2011) ...................................... 10, 12

*King v. West Corp.*, No. 8:04 Civ. 318, 2006 WL 118577 (D. Neb. Jan. 13, 2006) ................... 12

*Kronick v. bebe Stores, Inc.*,
  No. 07 Civ. 4514, 2008 WL 4546368 (D.N.J. Oct. 2, 2008) .................................................... 11

*Krueger v. N.Y. Tel. Co.*,
  Nos. 93 Civ. 178 & 179, 1993 WL 276058 (S.D.N.Y. July 21, 1993) .................................... 11

*Levinson v. Primedia Inc.*,
  No. 02 Civ. 2222, 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) ............................................ 10

*Lujan v. Cabana Management, Inc.*,
  No. 10 Civ. 755, 2011 WL 317984 (E.D.N.Y. Feb. 1, 2011) ................................................... 20

*Maas v. Cornell*, 94 N.Y. 2d 87 (1999) ....................................................................................... 20

*Marsh v. Butler Cnty. Sch. Sys.*, 242 F. Supp. 2d 1086 (M.D. Ala. 2003) .................................. 12

*McElmurry v. US Bank Nat'l Ass'n*,
  No. 04-642-HU, 2006 WL 3908536 (D. Or. Dec. 8, 2006) .................................................... 19

*McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438 (S.D.N.Y. 2012)..................... 10, 11, 14

*Myers v. Hertz Corp.,* 624 F.3d 537 (2d Cir. 2010) .................................................................... 22

*Nakahata v. New York Presbyterian Healthcare Sys., Inc.*,
  Nos. 10 Civ. 2661, 2662, 2683, 3247, 2011 WL 321186 (S.D.N.Y. Jan. 28, 2011) ............... 16

*Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003).......................................................................... 14

iii

*Richards v. Computer Scis. Corp.*,
    No. 3-03 Civ. 630, 2004 WL 2211691 (D. Conn. Sept. 28, 2004) ........................................... 14

*Ritz v. Mike Rory Corp.*,
    No. 12 Civ. 367, 2013 WL 1799974 (E.D.N.Y. Apr. 30, 2013) ................................................ 24

*Silva v. Calle 8, LLC*, No. 12 Civ. 677, 2013 WL 6330848 (E.D.N.Y. Dec. 5, 2013) ................ 20

*Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703 (N.D. Tex. 2008) ........................................... 14

*Trinh v. JP Morgan Chase & Co.*,
    No. 07 Civ. 1666, 2008 WL 1860161 (S.D. Cal. Apr. 22, 2008) ................................. 10, 12, 19

*Vasquez v. Vitamin Shoppe Indus. Inc.*,
    No. 10 Civ. 8820, 2011 WL 2693712 (S.D.N.Y. July 11, 2011) ...................................... *passim*

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ..................................... 12

*Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947) .................................................. 15, 16, 17

*Wang v. Hearst Corp.*, ("*Wang I*"),
    No. 12 Civ. 793, 2012 WL 2864524 (S.D.N.Y. July 12, 2012) ................................................. 23

*Wang v. Hearst Corp.* ("*Wang II*"), 293 F.R.D. 489 (S.D.N.Y. 2013) .................................. 17, 22

*Young v. Cooper Cameron Corp.*, 229 F.R.D. 50 (S.D.N.Y. 2005) ............................................ 11

*Zheng v. Good Fortune Supermarkets, Inc.*,
    13 Civ. 00060, 2013 WL 5132023 (E.D.N.Y. Sept. 12, 2013) ................................................. 20

## Statutes

29 U.S.C. § 256 ........................................................................................................................... 24

Fed. R. Evid. 602 ....................................................................................................................... 14

## Other Authorities

U.S. Dep't of Labor, "Fact Sheet # 71:
    Internship Programs Under The Fair Labor Standards Act" ............................................. 17, 19

U.S. Dep't of Labor Field Op. Handbook ¶10b11(b) ................................................................ 17

U.S. Dep't of Labor Opinion Letter, 1975 WL 40999 (Oct. 7, 1975) ......................................... 17

## PRELIMINARY STATEMENT

This is a putative collective action that was commenced by a solitary former intern seeking wages under the Fair Labor Standards Act ("FLSA").  Plaintiff Kyle Grant ("Plaintiff" or "Grant") contends that his claims are typical of the claims of, and that he is similarly situated to, thousands of other interns nationwide.  Plaintiff now seeks the issuance of Court-authorized notice of this matter under Section 216(b) of the FLSA to "all current and former interns of Warner Music Group Corp. and/or Atlantic Recording Corporation, engaged in an internship program from June 27, 2010 through the present."  (Br. at 2).

This Court should deny Plaintiff's motion.  While the standard for Court-authorized notice under Section 216(b) is lenient, it is neither automatic, nor appropriate in every case.  Here, Court-authorized notice is not appropriate because Plaintiff has not met his burden of establishing that he is similarly situated to the thousands of individuals who have interned at no fewer than 18 different corporate subsidiaries and affiliates, in seven different states, in hundreds of different departments.  Among other things:

- There is no singular, unified internship program (nor one that is centrally administered), and thus Plaintiff has not identified (and cannot identify) a nationwide common, allegedly unlawful policy or practice which has been applied to all members of the putative collective;

- The members of the putative collective have been dispersed throughout Defendants' offices nationwide, and Plaintiff has offered no evidence about any of them other than two of Defendants' three New York locations; and

- The members of the putative collective have been dispersed throughout Defendants' different businesses, among hundreds of different departments, and supervised by hundreds of different employees, and thus internships vary so widely from individual to individual that highly individualized proof is required to establish both the claims and defenses in this action.

In these circumstances, nationwide notice is inappropriate.

## FACTS RELEVANT TO § 216(b) ANALYSIS

### A.   THE PARTIES AND DECLARANTS

Defendant Warner Music Group Corp. ("WMG") is one of the world's major music-based content companies.  (IF Dec. ¶4).[1]  Via its various subsidiaries, affiliates, record labels and sub-labels, WMG is engaged in two core businesses: Recorded Music and Music Publishing.  (*Id.*).  WMG has at least 18 subsidiaries and/or affiliates which have hosted interns, made up of various record labels (*e.g.*, Asylum, Nonesuch, Rhino), music publishers (*e.g.*, Warner/Chappell Music), artist services businesses (*e.g.*, artist management, merchandising, touring, fan clubs, VIP ticketing, sponsorships and brand endorsements) and sales and marketing arms (*e.g.*, Warner/Elektra/Atlantic Corp.), all of which have a multitude of different departments housed within them (*e.g.*, Artist & Repertoire ("A&R"), Marketing, Publicity, Art, Sales, New Media, Finance, Information Technology, Human Resources).  (*Id.* ¶¶5, 9).  WMG and its subsidiaries and affiliates have offices nationwide, including in California, Georgia, Florida, Minnesota, New York, Tennessee, and Utah.  (*Id.* ¶9).  Its corporate headquarters are located at 75 Rockefeller Plaza, New York, New York, and this is where the majority of its New York interns are assigned.  (*Id.* ¶6).

Defendant Atlantic Recording Corporation ("Atlantic") is a record label and one of WMG's numerous subsidiaries.  (MB Dec. ¶2).  Atlantic is headquartered at 1290 Avenue of the Americas, where its New York interns are situated.  (*Id.* ¶5).  Atlantic itself has numerous sub-labels (*e.g.*, Elektra Records, Big Beat Records, Canvasback Music, and Roadrunner Records).[2]  (*Id.* ¶3).

---

[1] The following declarations are attached to the Declaration of Laura Sack, Esq. as Exhibits A-G:  Monica Barrios ("MB Dec."), Carolyn Clark ("CC Dec."), Ioannis Fagkridas ("IF Dec."), Edward Larsen ("EL Dec."), Brian Murray, Jr. ("BM Dec."), Michelle Ozog ("MO Dec."), and Andrew Spalter ("AS Dec.").

[2] Plaintiff has not sued the multitude of other WMG subsidiaries, and thus we are unclear whether he seeks to send Court-authorized notice to interns of all of them, or merely to interns of Atlantic.  Most subsidiaries are well-known

During the three-year period immediately preceding the filing of the Complaint, WMG and Atlantic collectively hosted about 3,000 student interns who were assigned throughout WMG's numerous subsidiaries and/or affiliates, and within their hundreds of different departments, throughout California, Georgia, Florida, Minnesota, New York, Tennessee, and Utah. (IF Dec. ¶9). Three of those 3,000 interns are Plaintiff and purported opt-in plaintiffs Evan Brieff ("Brieff") and Samuel Westerkon ("Westerkon").[3]

Grant interned in the Promotions Department for WBR in New York during the Spring 2013 semester. (Grant Dec. ¶3; IF Dec. ¶17). At the time, he was enrolled at the College of New Rochelle ("CNR"), and he was required by CNR to complete 200 hours of on-site internship activities in order to earn the four credits allotted by CNR for his internship. (IF Dec. ¶17; IF Dec. Exh. B). Brieff, too, interned in WBR's New York Promotions Department, during the Fall 2012 semester.[4] (*Id.* ¶18). Brieff was then a student in the Communication and Media Department at SUNY New Paltz, majoring in Media Management. (IF Dec. ¶ 18; IF Dec. Exh. C). Both Grant and Brieff were supervised by Promotions Assistant Darnel Joseph. (IF Dec. ¶¶17-18). Westerkon interned in Atlantic's Digital Media Department in New York during the Summer of 2012. (*Id.* ¶19; Westerkon Dec. ¶3). Westerkon was then a finance and marketing double major at the University of Delaware, and he interned in connection with a 3-credit course called "Business Administration in Practice." (IF Dec. ¶ 19; IF Dec. Exh. B).

Henry, who provided a declaration in support of Plaintiff's motion, was an intern in Atlantic's A&R Department in New York during the Spring 2008 semester and thus he is not

---

to the public, and easily discernible in corporate filings, such as Warner Bros. Records Inc. ("WBR") and Warner/Chappell Music, Inc. To the extent that Plaintiff believes these entities to be defendants in this case (which they are not), we reserve their rights to object.

[3] Brieff opted in on January 7, 2014, the day after Plaintiff served documents in support of this motion.

[4] Brieff interned again during the Spring 2013 semester, in WBR's Video Department in New York City. (*Id.*).

within the putative collective.[5]  (Henry Dec. ¶3; IF Dec. ¶20).  He was then a student at Long

Island University-Brooklyn Campus.  (IF Dec. ¶20; IF Dec. Exh. B).

### B.    THE SPARSE FACTS SUBMITTED BY PLAINTIFF IN SUPPORT OF HIS MOTION

In support of his motion for Court-authorized notice to be sent to a nationwide, 3,000-

member collective, Plaintiff submits for the Court's consideration a few pages from WMG's

website and terse declarations signed by him and two other former New York interns.

The website pages consist of a generalized description of an internship experience

(articulated in a manner entirely consistent with "trainee" status) (Ambinder Dec. Exh. E), an

online blank internship application (Ambinder Dec. Exh. F), and generic online postings for

internship opportunities around the country with WMG's various subsidiaries and divisions

(Ambinder Dec. Exhs. G1-6).[6]

Each of the three declarations is two pages.  None of them sets forth any allegedly

personal knowledge concerning interns hosted by Atlantic or WMG outside of New York,

including (i) locations identified in Plaintiff's own motion papers – California, Illinois, Florida,

Tennessee, and Utah; (ii) WMG's third Manhattan location at West 54th Street; and (iii)

Minnesota, where interns also have been hosted.  (IF Dec. ¶9).

Plaintiff contends in his declaration that his "typical duties consisted of various basic

tasks" and "routine office duties."  (Grant Dec. ¶¶7-8).  He claims to have "personally observed

at least approximately 60 other interns who performed similar duties on behalf of WMG, and

were also not paid."  (*Id.* ¶13).  Plaintiff allegedly discussed the internship program with only

three (of 3,000) interns, whom he identifies as "Romney" and  "Trey" – apparently nicknames –

---

[5] It cannot be assumed that Henry's intern experience is illustrative of the experience of members of the putative collective, all of whom interned years after he did.
[6] Exh. G-2 to the Ambinder Declaration is an announcement for an internship opportunity in Illinois – a location which has hosted *no* interns at any time since June 2010.  (IF Dec. ¶10).

and "Christopher Storey." (*Id.* ¶14). Because no additional information is provided about them, it is assumed that these three interned in New York during the same time period as Plaintiff.

Westerkon's internship experience differed substantially from Plaintiff's. For example, Westerkon does not claim to have performed "basic tasks" or "office tasks" (the very tasks Plaintiff claims to have performed) -- instead, Westerkon contends that his "typical duties consisted of preparing analytics in Adobe, proofreading, and assisting in product development." (Westerkon Dec. ¶7). He asserts, however, that he "was already skilled at using Adobe before [his] internship." (*Id.* ¶9). Westerkon further declares, without elaboration or detail, that he "personally observed at least 150 other interns who performed similar duties on behalf of WMG, and were also not paid," and that "WMG treated other interns in a manner similar to [him] based on [his] observations as well as the discussions [they] had amongst [them]selves." (*Id.* ¶¶14-15). Westerkon's declaration does not provide any factual detail as to how other interns were "treated," and he does not identify by name a single other intern, much less anyone whose internship activities were similar to his.

Finally, while Henry describes his internship experience as more similar to Plaintiff's, Henry interned for Atlantic six years ago, and thus, he is not eligible to participate as a member of the putative collective. He names one other person who was "treated" by WMG "in a manner similar to [him]," but just like his co-declarants, he fails to provide any detail. (Henry Dec. ¶12).

None of the declarants claims to have received academic credit in connection with his internship, and none of their respective schools oversaw their internships (allegedly). (Grant Dec. ¶12; Westerkon Dec. ¶13; Henry Dec. ¶11). They each claim to have interned five days a week, although their hours differed. (Grant Dec. ¶4 (9:30 a.m. to 8:00 p.m.); Westerkon Dec. ¶4 (9:30 a.m. to 5:00 p.m.); Henry Dec. ¶4 (10:00 a.m. to 6:00 p.m.)).

C.   **DEFENDANTS' INTERNSHIP PROGRAMS – DISPERSED THROUGHOUT SEVEN DIFFERENT STATES – ARE SEPARATELY MANAGED, AND THE EXPERIENCES OF INTERNS VARY WIDELY BY SUBSIDIARY AND AFFILIATE, LOCATION AND DEPARTMENT**

WMG and Atlantic both have internship programs, which are separately administered and managed in many respects.  (IF Dec. ¶¶13-14; MB Dec. ¶6).  Recruitment of interns for Atlantic in New York is handled by members of Atlantic's HR Department, while recruitment of other interns is handled by WMG's HR Department.  (IF Dec. ¶14; MB Dec. ¶6).  Atlantic also conducts its own orientation program, exclusively for Atlantic interns in New York,[7] which is significant here inasmuch as Plaintiff – who interned for WMG – concedes that his orientation was meaningful training and/or education, while Westerkon – who interned for Atlantic– claims that he did not receive any formal training and/or education and does not mention any orientation.  (MB Dec. ¶7; Grant Dec. ¶8; Westerkon Dec. ¶8).

Atlantic's Human Resources employees serve as the HR liaisons for Atlantic's interns in New York, whereas members of WMG's HR Department serve that function for other interns. (IF Dec. ¶14; MB Dec. ¶4).  Monica Barrios, one of the Atlantic HR Department employees responsible for managing Atlantic's internship program, has no involvement in the management of WMG's other internship programs.  (MB Dec. ¶6).  This difference in program administration, combined with the independence exercised within subsidiaries, affiliates, and locations with respect to their interns, translates to differences in intern policies and procedures.  For example, interns at some of WMG's subsidiaries and affiliates (including, for example, Westerkon and Henry, but <u>not</u> including Plaintiff or Brieff) have been eligible to receive a travel stipend to

---

[7] Atlantic's orientation program typically includes influential guest speakers such as Julie Greenwald ("Greenwald"), Atlantic's Chairman and Chief Operating Officer.  (MB Dec. ¶7)

defray their out of pocket transportation expenses.[8]  (IF Dec. ¶21 and Exh. D; EL Dec. ¶11).

Interns assigned to one of WMG's subsidiaries (Warner/Chappell Music, Inc.) at one specific

location (California) have been required to complete "intern timesheets" and to submit those

time sheets to HR at the end of each week of their internship, signed by the intern and the

intern's manager.  (IF Dec. ¶21).

     Of particular relevance, the types of unique educational programs and social/recreational

events created and conducted for the benefit of the interns vary by subsidiary or affiliate, and by

location.  (*Id.* ¶¶24,-26).  WMG's and Atlantic's HR Departments each organize different intern

events, and Atlantic's intern events are open only to Atlantic interns.  (IF Dec. ¶¶24-26; MB

Dec. ¶7).  Depending on their designated subsidiary or affiliate and location, interns may be

invited to participate in some combination of the following special events: an orientation/social

mixer event; a resume writing workshop; guest speaker events, such as "Snack n' Chat" (at

which employees from different departments meet with interns in a classroom-like environment

to inform interns about their department and its functions, and to share knowledge they have

gained throughout their career); focus groups; "Business Speakers Events;" and "Internship

Networking Events."  (IF Dec. ¶¶24-26; MB Dec. ¶¶8-9).  Additionally, some interns are invited

to special events by their own intern supervisors.  For example, WMG A&R intern Carolyn

Clark ("Clark") was invited by her supervisor to attend the concert of a WMG Canada band, and

her supervisor introduced Clark to members of the band and to the president of WMG Canada.

(CC Dec. ¶14). Other interns have been offered the opportunity to participate in the "School of

Rock," an educational session led by Pete Ganbarg, Atlantic's Executive Vice President and

Head of A&R. (MB Dec. ¶10).

---

[8] Some California interns have received a company garage parking card for their use in the course of their internship to defray their travel costs.  (MB Dec. ¶11).

Atlantic provides a unique educational opportunity to its interns in New York and California: the "Marketing Madness" program, through which inter-departmental groups of Atlantic interns are teamed up to create a mock marketing campaign to promote a particular band or artist.   (MB Dec. ¶8).  In the course of this semester-long contest, each Marketing Madness team receives oversight, supervision, support, and guidance from Atlantic employees with regard to that team's campaign.  (*Id.*).  Each team submits a written integrated marketing plan for its selected artist and the teams then present their plans orally to Greenwald.  (*Id.*).  The team with the best mock marketing campaign wins a prize.  (*Id.*).  Only Atlantic's interns are eligible to participate in Marketing Madness.  (*Id.*).

Notwithstanding this diverse and plentiful array of educational enrichment opportunities afforded to interns throughout WMG, Plaintiff, Westerkon and Henry contend that they were not offered any educational opportunities in the course of their internships, aside from an orientation session that Plaintiff and Henry concede they attended.  (Grant Dec. ¶8; Westerkon Dec. ¶8; Henry Dec. ¶7).  Other interns have been invited to participate in a variety of education and social events designed specifically for them.  *See*, *e.g.*, CC Dec. ¶¶12 (attended two "Snack & Chat" lunches); EL Dec. ¶12 (invited to resume writing workshop); BM Dec. ¶10 (invited to lunch discussions with Atlantic executives, and to resume building workshops).

Intern activities are also shaped individually by the varied special projects they participate in.  These projects are uniquely tailored to the individual intern's course of study and interests, and are designed to be completed over the course of the semester-long internship based on the skills they develop.  (IF Dec. ¶23).

Plaintiff, Westerkon, and Henry fail to provide any evidence of what activities other interns engaged in, and under what circumstances.  And, despite Plaintiff's unsupported

suggestion to the contrary, there is no standardized "intern description" at WMG or at Atlantic,[9] nor could there be, since the specific activities engaged in by interns vary so widely depending on the intern's designated WMG subsidiary or affiliate, department, and supervisor(s).  (MB Dec. ¶12; CC Dec. ¶2; IF Dec. ¶22; EL Dec. ¶8; BM Dec. ¶7; MO Dec. ¶¶7-8; AS Dec. ¶7).  This fact is illustrated by Westerkon's declaration, in which he states that he engaged in activities that were entirely different from the activities Plaintiff and Henry claim they engaged in.  (Grant Dec. ¶7; Westerkon Dec. ¶7; Henry Dec. ¶6).  Intern schedules also widely vary based on their academic schedule, course requirements, and personal preferences; there is no standard schedule to which all interns are compelled to adhere.  (MB Dec. ¶17; CC Dec. ¶5; IF Dec. ¶31; BM Dec. ¶6; MO Dec. ¶4; AS Dec ¶6).  Plaintiff's own submissions reveal that his intern schedule was different from Westerkon's and Henry's.  (Grant Dec. ¶4; Westerkon Dec. ¶4; Henry Dec. ¶4).

Common across the internship programs of WMG, Atlantic and their respective subsidiaries, affiliates, sub-labels and locations is the requirement that intern candidates must be enrolled in school and registered to receive credit for their internships.  Plaintiff claims that he (along with Westerkon and Henry) did not receive school credit – despite that each of them submitted a Letter of Credit from his school attesting to the fact that he was registered for a course that provided academic credit in connection with his internship.  (Grant Dec. ¶12; Westerkon Dec. ¶13; Henry Dec. ¶11; IF Dec. ¶16 and Exhs. B-C).   Plaintiff does not explain why he, Westerkon and Henry did not ultimately receive academic credit for their internships.  Other interns did receive school credit.  (MB Dec. ¶14; CC Dec. ¶7; IF Dec. ¶27; EL Dec. ¶7; MO Dec. ¶3; AS Dec. ¶5).

_____

[9] Indeed, the "Internships" blurb from WMG's website that Plaintiff relies on is no more a standardized intern description than the blurb directly above it on the website (under the heading "Jobs") is a standardized job description.  (Ambinder Dec. Exh. E).

# ARGUMENT

**A.   THE COURT SHOULD NOT AUTHORIZE NOTICE**

1.   Legal Standard

The Court has discretion to decide whether judicial efficiency will be served by permitting notice to the putative collective, and may exercise such discretion only if the plaintiff satisfies his burden of establishing that he is similarly situated to the putative collective members he seeks to represent. *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 170 (1989).

While Plaintiff's burden at the conditional certification stage is modest, "it is not non-existent" and certification "is not automatic." *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 443 (S.D.N.Y. 2012); *Khan v. Airport Mgmt. Servs., LLC,* No. 10Civ.7735, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011); *Vasquez v. Vitamin Shoppe Indus. Inc.,* No. 10 Civ. 8820, 2011 WL 2693712, at *3 (S.D.N.Y. July 11, 2011); *Guillen v. Marshalls of MA, Inc.* ("*Guillen I*"), 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010) ("the burden is not non-existent and the factual showing, even if modest, must still be based on some substance"); *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010); *see also Trinh v. JP Morgan Chase & Co.*, No. 07 Civ. 1666, 2008 WL 1860161, at **3-4 (S.D. Cal. Apr. 22, 2008); *Clausman v. Nortel Networks, Inc.*, No. 02-0400, 2003 WL 21314065, at *4 (S.D. Ind. May 1, 2003).

Specifically, Plaintiff's burden is to set forth evidence "sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that *violated the law*." *Diaz v. Elec. Boutique of Am., Inc.*, No. 04 0840E, 2005 WL 2654270, at *3 (W.D.N.Y. Oct. 17, 2005) (emphasis added) (quoting *Hoffman v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *Vasquez*, 2011 WL 2693712, at *3; *Levinson v. Primedia Inc.*, No. 02-CIV-2222, 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003). To do so, Plaintiff cannot merely point to similarities that are *unrelated* to the underlying inquiry whether he (and the collective) was

properly classified as a trainee and not an employee.  Rather, he must identify facts which demonstrate that he and the collective are "similarly situated … <u>with respect to their allegations that the law has been violated</u>."  *Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (citing *Krueger v. N.Y. Tel. Co.*, Nos. 93 CIV 178 & 179, 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993)) (emphasis added).

Moreover, Plaintiff must proffer *competent* evidence to meet this burden.  *Kronick v. bebe Stores, Inc.*, No. 07 Civ. 4514, 2008 WL 4546368, at *2 (D.N.J. Oct. 2, 2008); *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002).  Conclusory or generalized statements, speculation, and sworn statements submitted "on information and belief" do not suffice.  *McGlone*, 867 F. Supp. 2d at 443 ("the modest factual showing cannot be satisfied simply by unsupported assertions"); *Ikikhueme v. CulinArt, Inc.*, No. 13 Civ. 293, 2013 WL 2395020, at *2 (S.D.N.Y. June 3, 2013).

> 2.    Plaintiff has Submitted No Evidence of an Unlawful Nationwide <u>Written Policy or Unlawful Nationwide Unwritten Practice</u>
>
> (a)    *Allegations of a common (mis)classification are not sufficient*

The mere allegation that Defendants misclassified Plaintiff and other interns as trainees under the FLSA does not justify Court-authorized notice, because it "is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes."  *Vasquez,* 2011 WL 2693712, at *4 (citing *Bramble v. Wal-Mart Stores, Inc.,* No. 09 Civ. 4932, 2011 WL 1389510, at *4 (E.D. Pa. Apr. 12, 2011)); s*ee also Guillen v. Marshalls of MA, Inc.* ("*Guillen II*"), No. 09 Civ 9575 (LAP) (GWG), 2012 WL 2588771, at *1 (S.D.N.Y. July 2, 2012) (collecting cases in support of the rule that "the mere fact of a common FLSA-exempt designation, job description, or uniform training is insufficient to find [a putative class] 'similarly situated' for FLSA purposes"); *Colson*, 687 F.

11

Supp. 2d at 927 (denying FLSA conditional certification and holding that the "mere classification of a group of employees as exempt does not automatically dictate … whether collective action notification is appropriate") (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009)); *In re Wells Fargo Home Mort.*, 571 F.3d 953, 959 (9th Cir. 2009); *Trinh*, 2008 WL 1860161, at **3-5 (denying FLSA conditional certification where plaintiffs' only allegation was that defendants uniformly classified plaintiffs and other loan officers as exempt); *King v. West Corp.*, No. 8:04  Civ. 318, 2006 WL 118577, at *13 (D. Neb. Jan. 13, 2006) ("[m]erely showing that an employer classified a group of employees as exempt is not sufficient to establish that [those] employees are similarly situated for the purposes of an FLSA collective action"); *Marsh v. Butler Cnty. Sch. Sys.*, 242 F. Supp. 2d 1086, 1094 (M.D. Ala. 2003) ("the mere fact that violations [of the FLSA] occurred cannot be enough to establish similarity").

*(b)*    *Plaintiff submits no probative evidence*
*concerning interns outside of New York*

Plaintiff submits no evidence of a nationwide policy or practice; indeed, neither he nor Westerkon or Henry includes any specific reference to any office location outside of New York, or to any intern who participated in an internship outside of New York.  Courts routinely deny motions to conditionally certify nationwide collective actions where, as here, the plaintiff submits evidence from only a few employer sites, since such submissions fail to offer any personal knowledge that persons at other sites engaged in similar job duties.  *Ikikhueme*, 2013 WL 2395020, at **2-3 (denying conditional certification of sous chefs nationwide where plaintiff failed to provide any evidence about the duties of sous chefs at locations other than plaintiff's); *Khan,* 2011 WL 5597371 at **4-5 (denying conditional certification where store manager failed to establish that other store managers at defendants' 600 stores were given duties

12

that were inconsistent with company policy and their exempt status); *Ahmed v. T.J. Maxx Corp.*, No. 10 Civ. 3609, 2013 WL 2649544, at *13 (E.D.N.Y. June 8, 2013) (reversing Magistrate Judge, and denying conditional certification of nationwide class of managers precisely because the plaintiffs' evidence concerning the performance of non-exempt work was from an "extremely limited" geographical region (New York and Connecticut)); *Vasquez*, 2011 WL 2693712, at *3 (denying conditional certification of store managers nationwide because "a geographically concentrated cluster of [store managers] whom [plaintiff] claims were assigned duties inconsistent with their exempt classification … is too thin a reed on which to rest a nationwide certification."); *Bramble*, 2011 WL 1389510, at *8 (declining to conditionally certify nationwide class where there was "sparse evidence … to support plaintiff's contention that all [persons in his job title nationwide] similarly performed non-exempt tasks").

Plaintiff seems to contend that the postings announcing the availability of internship opportunities in California, Illinois, Miami and Nashville, and Utah compel the conclusion that nationwide notice is appropriate (Ambinder Dec. Exh. G1-6; Br. at 5-6), but he submits no evidence whatsoever to establish that interns at these locations were similarly situated to him. Plaintiff proffers not one declaration from any student who interned at any of these locations, and neither Plaintiff nor Westerkon or Henry address this point in their declarations. Plaintiff's rank speculation in his brief that "Defendants implemented common policies at all locations that would affect all former and current interns" (Br. at 6) is unsupported by any probative evidence. Plaintiff's wholesale speculation, asserted solely in a memorandum of law, cannot substitute for sworn testimony on personal knowledge. *See* fn. 10, *infra*.

Plaintiff also argues that he has met his burden by alleging that "Defendants uniformly enforce … unlawful policies and practices at all locations," and that "interns are all subject to

13

identical policies, under one centralized internship program." (Br. at 5). However, he submits no admissible proof in support of this naked assertion. Neither Plaintiff nor Westerkon or Henry claim to have first-hand knowledge of how Defendants coordinate or administer their respective internship programs, nor do they even identify this alleged "centralized location." Very simply, none of the evidence submitted by Plaintiff demonstrates that he (or Westerkon or Henry) has personal knowledge of internship programs in other departments, other subsidiaries and affiliates, other labels and sub-labels, and other locations across the country.[10]

The only admissible (and irrefutable) proof on this subject is the declarations submitted by Defendants, which uniformly assert, with proper foundation and based on personal knowledge, that Atlantic's internship program is largely maintained separately from WMG's, and that even within Atlantic and WMG respectively, interns are subject to different policies and protocols, and are invited to participate in different educational programs, social activities, and special events, based on the subsidiary, sub-label department, and location at which they are interning. (IF Dec. ¶¶23-26; MB Dec. ¶¶6-12).

Moreover, even if Plaintiff did present admissible evidence of a single nationwide program, he fails to identify any policies or practices administered nationwide "that *violated the*

---

[10] Sworn statements submitted to support a motion for conditional certification must be based on personal knowledge. *See, e.g., McGlone,* 867 F. Supp. 2d at 444 ("declaration that is not made on personal knowledge, but instead based on information or belief, does not set out facts that would be admissible in evidence" to satisfy the plaintiffs' burden to show nationwide collective action is appropriate); *Songer v. Dillon Res., Inc.,* 569 F. Supp. 2d 703, 707 (N.D. Tex. 2008) (where "affidavits contain nothing to establish that the plaintiffs have personal knowledge of those matters as they pertain to any other [employee] … they are not evidence of a 'widespread discriminatory plan'"); *Richards v. Computer Scis. Corp.,* No. 3-03 Civ. 630, 2004 WL 2211691, at *2-3 (D. Conn. Sept. 28, 2004) (striking portions of affidavits submitted with motion for conditional certification based on improper hearsay and lack of personal knowledge with respect to conclusory allegations). "Conclusions about the policies in place at '*all* of [defendant's] branches' based on conversations with just *some* branch managers" should be excluded as mere speculation. *Berndt v. Cleary Bldg. Corp.,* No. 11 Civ. 791, 2013 WL 3287599, at *13-14 (W.D. Wis. Jan. 24, 2013) (emphasis added) (motion to strike portions of plaintiffs' declarations granted in part). Federal Rule of Evidence 602 also requires that "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Although "personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions or rumors . . . .'" *Payne v. Pauley,* 337 F.3d 767, 772 (7th Cir. 2003) (citations omitted).

law." *Diaz,* 2005 WL 2654270, at *3 (emphasis added).  The "Internships" blurb on WMG's website and the internship postings Plaintiff proffers do not describe the internship program – or any policy or plan of that program – that is "sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that *violated the law*." *Diaz*, 2005 WL 2654270, at *3 (emphasis added).  To the contrary, the postings' descriptions of the internship program are entirely consistent with the sort of activities that are the hallmark of a *bona fide* internship program, such as the opportunity to "shadow" industry professionals. (Ambinder Dec. Exh. E, G1-6).[11]

Plaintiff's reliance upon WMG's general description of its internship program is unavailing for precisely the same reason: it sets forth an innocuous summary that has no bearing upon the points of law at issue in this case.  (Br. at 5; Ambinder Dec. Exh. E).  For example, Plaintiff alleges that Defendants require interns to "make a commitment of at least 15 hours per week," that all prospective interns "are directed to the same internship application," and that they are advised at the time of application that internships are unpaid.[12]  (Br. at 5).  None of this is unlawful, inconsistent with trainee status, or even implicates the legal analysis under *Walling* or the DOL six-factor "trainee" test  (see *infra*).  Indeed, by way of analogy, the mere fact that a single human resources department administers employment policy for all company employees – from clerical up to CEO – does not mean that all such employees are similarly situated for

---

[11] The language used in each of the six announcements in Exhibit G is virtually identical to that used in the "Internships" blurb Plaintiff relies on.  (Ambinder Dec. Exh. E).  None of these documents identifies *any* specific intern responsibilities and/or tasks, and thus these documents lend *no* support to Plaintiff's argument that all interns perform tasks and functions similar to his.  See Section A(2)(c), *infra*.

[12] The documents Plaintiff proffers from WMG's website do not set forth the daily activities of interns (or job duties, as Plaintiff would argue), and thus this case is distinguishable from the cases in which courts certified FLSA actions, in part, on the basis of a common job description.  *Cf. Indergit v. Rite Aid Corp.*, No. 08 Civ. 11364, 2010 WL 2465488, at *5 (S.D.N.Y. June 16, 2010) (conditionally certifying class of store managers because plaintiff submitted proof that job descriptions and other corporate documents "indicate that store managers are officially assigned a similar set of duties"); *Chowdury v. Duane Reade*, No. 06 Civ. 2295, 2007 WL 2873929, at *4 (S.D.N.Y. Oct. 2, 2007) (conditionally certifying class of assistant store managers based on uniform job descriptions).

purposes of an FLSA collective action challenging their exempt status.  *See, e.g.*, *Nakahata v. New York Presb. Healthcare Sys., Inc.*, Nos. 10 Civ. 2661, 2662, 2683, 3247, 2011 WL 321186 (S.D.N.Y. Jan. 28, 2011).

> (c)   *Plaintiff submits no evidence that he is similarly situated to interns nationwide, or even in New York*

Certification is inappropriate where, as here, determining liability will be extremely individual and fact-intensive, and thus the members of the putative collective are not similarly situated to one another for purposes of Section 216(b).[13]  In *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), the Supreme Court held that trainees who worked unpaid for the defendant rail company during a course of training were not employees, because their work was closely supervised and they did not expedite the railroad's business or replace paid employees.[14]  Based on principles drawn from *Walling*, the Department of Labor created a six-factor test[15] to determine employee/intern status.  Critically, "[w]hile the weight to be given to these factors is

---

[13] Without any evidence of a formal, facially unlawful policy on which to rely, Plaintiff may establish liability only by demonstrating that the internship activities in which he actually participated made him an employee under the FLSA pursuant to the applicable standard of law.  Thus, for Plaintiff to establish that he is similarly situated to any putative collective for purposes of initial certification of his claim, he must satisfy this Court that the internship activities in which he actually participated – and which he asserts result in his status as an "employee" under the FLSA – are sufficiently similar to those internship activities engaged in by the putative collective such that this case is suitable for resolution on a representative basis.  *Guillen I*, 750 F. Supp. 2d at 476.  Although the Second Circuit has yet to prescribe a particular method for determining whether members of a putative collective are similarly situated, district courts in this Circuit look to the "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class." *Guzman v. VLM, Inc.,* No. 07 Civ. 1126, 2007 WL 2994278, at *3 (E.D.N.Y. Oct. 11, 2007) (collecting authority) (internal quotation marks omitted).

[14] For purposes of this motion, Defendants are not challenging the underlying merits of Plaintiff's claims.  But to properly assess whether conditional certification is appropriate at this stage, the applicable standards governing the determination of one's status as either an employee or an intern must be considered.

[15] Defendants do not concede that this is the appropriate standard, but for purposes of this motion we assume *arguendo* that the Court will, at a minimum, be guided by it.  The six factors are: (i) whether the internship, even though it includes actual operation of the facilities of the employer, is similar to training which would be given in an educational environment; (ii) whether the internship experience is for the benefit of the intern; (iii) whether the intern displaces employees or works under close supervision of staff; (iv) whether the employer that provides the training derives any immediate advantage from the activities of the intern, and whether its operations on occasion may actually be impeded; (v) whether the intern is necessarily entitled to a job at the conclusion of the internship; and (vi) whether the employer and the intern understand that the intern is not entitled to wages for the time spent in the internship.

far from crystal clear, the Fact Sheet adds to the confusion with the introductory language: 'whether an internship or training program meets this exclusion <u>depends upon all of the facts and circumstances of each such program</u>.'"  *Wang v. Hearst Corp.* ("*Wang*"), 293 F.R.D. 489, 493 (S.D.N.Y. 2013) (citing U.S. Dep't of Labor, "Fact Sheet # 71:  Internship Programs Under The Fair Labor Standards Act," available at http://www.dol.gov/whd/regs/compliance/whdfs71.pdf ("DOL Fact Sheet #71")) (emphasis added).[16]  The "totality of the circumstances" analysis based on *Walling* and/or the DOL's six-factor examination will require the Court to make liability determinations that will necessarily vary based on each individual's internship experience.  That does not make a collective action.

With respect to DOL Factors 1-4, interns throughout the various corporate entities and departments within New York City (to say nothing of those at subsidiaries and affiliates, sub-labels and departments, throughout the United States) engage in varied training activities; performed myriad operational activities; participate in varied educational programs and with varying degrees of frequency; and attend many different kinds of social and recreational events. (See *supra* pp. 6-9)  All interns are advised, and subsequently acknowledge in writing, that they are not entitled to wages for the time spent in the internship – potential evidence in furtherance of DOL Factor 6.

The declarations submitted in support of Plaintiff's motion demonstrate that highly individualized analysis would be required to dispose of this case on the merits.  Plaintiff avers that his "typical duties consisted of various basic tasks, such as answering telephones, making photocopies, deliveries, creating lists, organizing and cleaning the office, preparing coffee, getting lunch for paid employees, [and] running personal errands for paid employees."  (Grant

---

[16] *See also* U.S. Dep't of Labor Field Op. Handbook ¶ 10b11(b); Op. Ltr., 1975 WL 40999 (Oct. 7, 1975); *Glatt v. Fox Searchlight Pictures, Inc.,* 293 F.R.D. 516, 531-32 (S.D.N.Y. 2013).

Dec. ¶7).  In sharp contrast, Westerkon alleges that his "typical duties primarily consisted of preparing analytics in Adobe, proofreading, and assisting in product development."  (Westerkon Dec. ¶7).  Thus, Plaintiff is not even similarly situated to Westerkon with respect to their daily internship activities, let alone to all of WMG's and Atlantic's current and former interns nationwide.

Particularly instructive is *Vasquez*, 2011 WL 2693712, at **3-4.  In that putative collective action, the named plaintiff alleged that although he was classified by his employer as an FLSA-exempt store manager, he spent 80% of his time performing non-managerial tasks, such as stocking shelves and assisting customers in locating products.  Accordingly, he claimed that his job was misclassified as exempt from overtime wages.  In support of his motion for conditional certification, the plaintiff identified six other store managers who allegedly lacked the right to engage in traditional managerial responsibilities, and who performed non-managerial tasks such as selling products to customers, stocking shelves, cleaning the store, and working the register.  The plaintiff's motion for conditional certification was denied, because he provided only "allegations regarding the tasks performed by [six] specific individuals, based on his observations of and conversations" with them, "all of whom work at store locations in Brooklyn or Manhattan."  *Id*. at *3.  The Court held:

> [T]he only thread Plaintiff provides to link the handful of New York City [store managers] with their counterparts nationwide is their common exempt classification.  This is not sufficient, especially in a case such as this where the employees perform a hybrid of managerial and non-managerial tasks.  The FLSA regulations, which explicitly permit concurrent performance of exempt and non-exempt tasks, require that assessments of compliance with the executive exemption be done "on a case-by-case basis."  This assessment is a fact-intensive inquiry that examines the totality of the employee's duties and asks whether the employee's "primary duty" is the performance of exempt work.  Thus, while the balance of work responsibilities for [store managers] at some retail locations may

18

possibly support a finding of misclassification, in others the balance may tip in the opposite direction.

*Id*. at *4.

The *Vasquez* decision is supported by the clear weight of authority throughout the country. *See*, *e.g.*, *Ikikhueme*, 2013 WL 2395020, at *2; *Trinh,* 2008 WL 1860161, at **3-4 (denying conditional certification in exemption case where, as here, plaintiffs failed to provide evidence that putative class members "had essentially the same job description and training …"); *Chemi v. Champion Mort.*, No. 05 cv 01238, 2006 WL 454363 (D.N.J. June 19, 2006) (denying collective action notice, holding that "any determination of whether an employee is properly exempted under the FLSA involves a fact-intensive inquiry into each putative class member's employment circumstances"); *McElmurry v. US Bank Nat'l Ass'n*, No. 04-642, No. 04-642-HU, 2006 WL 3908536, at *5 (D. Or. Dec. 8, 2006) (judicial efficiency of collective action not served where individualized inquiry into each employee's job duties is necessary).

Moreover, Plaintiff, Westerkon and Henry all allege that they received no academic credit for their internship (notwithstanding the representations to the contrary that they made to WMG at the time of their internship). (Grant Dec. ¶12; Westerkon Dec. ¶13; Henry Dec. ¶11). If this is so, then this is still another factor that would compel an individualized determination of internship experiences. Indeed, in light of the fact that Defendants require *all* intern applicants to show proof of student status and enrollment in an accredited course of study attendant to their internship, it would appear that Plaintiff's, Westerkon's and Henry's failure to receive academic credit makes their experience *dissimilar* in a material way from that of the vast majority of Defendants' interns.[17]

---

[17] College credit is a significant factor in weighing the benefits of the internship. *See* Dep't of Labor Fact Sheet #71 ("In general, the more an internship program is structured around a classroom or academic experience as opposed to the employer's actual operations, the more likely the internship will be viewed as an extension of the individual's

Finally, the unfounded assertion that "WMG treated other interns in a manner similar to" Plaintiff and the other declarants (Grant Dec. ¶14; Westerkon Dec. ¶15; Henry Dec. ¶13) is plainly insufficient to warrant conditional certification.  *See Silva v. Calle 8, LLC*, No.  12 Civ. 677, 2013 WL 6330848, at *3 (E.D.N.Y. Dec. 5, 2013) ("Plaintiff's allegation that 'others similarly situated to myself . . . were treated in a similar manner' is made upon information and belief.  In fact, not only does plaintiff fail to specifically identify the similarly situated employees, he does not describe how such employees were treated 'in a similar manner'"). Plaintiff's reference to conversations with three people (two of whom are referred to only by nicknames or first names) does not cure this defect.  (Grant Dec. ¶14).  *Zheng v. Good Fortune Supermarkets, Inc.*, 13-cv-00060, 2013 WL 5132023, at *2 (E.D.N.Y. Sept. 12, 2013) (denying conditional certification, in part because although plaintiff claimed that she "observed" other employees whose time worked was not properly recorded and who "suffered the same illegal policies," plaintiff failed to identify such employees or the basis for her observations); *Fernandez v. Wells Fargo Bank, NA*, 12-cv-7193, 2013 WL 4540521, at *8 (S.D.N.Y. Aug. 28, 2013) (declaration stating that plaintiff "was aware of" similarly situated individuals was insufficient evidence because it lacked specificity as to dates or the identity of any of the individuals who were allegedly subjected to a common policy); *Lujan v. Cabana Management, Inc.*, No. 10 Civ. 755, 2011 WL 317984, at *7 (E.D.N.Y. Feb. 1, 2011) (declining to conditionally certify collective that included employees at Florida locations, where plaintiff had two conversations

---

educational experience (this often occurs where a college or university exercises oversight over the internship program and provides educational credit).")  The granting of credit by an academic institution also constitutes a judgment by that institution that the internship has educational value, and courts in New York do not lightly second-guess the educational judgments of institutions of higher education.  *Maas v. Cornell*, 94 N.Y. 2d 87 (1999).

with two employees, identified only by their first names, during which these workers reportedly told the plaintiff that the same violations were allegedly occurring at those locations).[18]

In marked contrast to the showing made in *Sandoval v. Galaxy General Contracting Corp.*, (Ambinder Dec. Exh. A), Plaintiff offers only conclusory assertions unsupported by specific representations of fact.  In *Sandoval*, the plaintiffs submitted declarations from four employees who had "worked at many of Defendants' approximately fifty job sites throughout New York City."  Here, Plaintiff interned at only one location in New York City, and yet, he seeks leave to send notices nationwide, including to interns in two other New York City locations, and to interns in California and five other far-flung states.  Additionally, in *Sandoval*, the plaintiffs demonstrated that they were similarly situated to other security guards, and to construction workers, by setting forth the specific duties their coworkers performed.  *Sandoval*, Declaration of Manuel Sandoval (Document 36), ¶4 (Sack Dec. ¶9 and Exh. H).  In contrast, Plaintiff, Westerkon and Henry assert merely that other interns performed unspecified "similar duties" to them.  (Grant Dec. ¶13; Westerkon Dec. ¶14; Henry Dec. ¶12).  The need for Plaintiff to specify the manner in which he is similarly situated to other interns is further heightened here because, unlike the job title of "Security Guard" or "Construction Worker," the label of "Intern" provides no insight into what Plaintiff and other purportedly similarly situated interns actually do on a daily basis.  And Plaintiff's own submissions (his description of his intern activities as compared to Westerkon's) demonstrate that intern activities vary dramatically.  Thus, Plaintiff's submissions fail to demonstrate that he is similarly situated even to other interns in New York City, much less interns in other locations nationwide.

---

[18] Even if Plaintiff were able to assert with the requisite degree of specificity that during the time of his internship, the other interns with Defendants nationwide performed duties similar to his, under similar supervisory circumstances, with similarly negligible personal benefit (which he has not), he has presented no evidence as to the experiences of WMG interns in the years 2010 and 2011.  *See Ikikhueme*, 2013 WL 2395020, at *2.

(d)      *Plaintiff's reliance upon Glatt and Wang is misplaced*

While Plaintiff contends that *Glatt* and *Wang* require conditional certification here, neither case has any application to the instant pre-discovery motion.

The conditional certification motion in *Glatt* was submitted following significant discovery, and the plaintiffs submitted affirmative evidence in support of their motion that there was "a common policy to replace paid workers with unpaid workers," including based on (i) deposition testimony from supervisors admitting that paid employees would have had to perform the tasks interns had been performing, (ii) internal documents revealing that departments requested more interns when they were busier, and (iii) an internal memo reporting that because paid internships were eliminated and overtime pay and temporary employees scaled back, "the size of our [unpaid] intern program more than doubled."  *See Glatt,* 293 F.R.D. at 536, 538.  No such evidence is submitted here.[19]  To the contrary, it is *not* Defendants' policy or practice to replace paid employees with interns, and in fact, the number of interns in Defendants' programs over the past three years has remained generally constant.  (IF Dec. ¶¶11-12).  What's more, plaintiffs in *Glatt* submitted records that contained the defendants' own detailed descriptions of intern duties to support their argument that all of the defendants' interns regularly performed productive work for the defendants and were therefore similarly situated.  *See, e.g., Glatt*, No. 11 Civ. 6784, Docket # 105-34 (Feb. 15, 2013) (Sack Dec. ¶¶10-13 and Exh. I).  Here, by contrast, Plaintiff has submitted merely a generic blurb regarding Defendants' internship programs generally, which contains no description of the "duties" to be performed by interns.

---

[19] The declarants' identical statements that Defendants would have had to require paid employees to perform the tasks that they allegedly performed (Grant Dec. ¶11; Westerkon Dec. ¶12; Henry Dec. ¶10), and that Defendants benefitted from the "work" that they and other interns performed (Grant Dec. ¶15; Westerkon Dec. ¶16; Henry Dec. ¶14), consist entirely of conclusory and wholesale speculation, unsupported by any factual foundation.  Indeed, these are "exactly the type of 'unsupported assertions' that, according to the Second Circuit, 'cannot . . . satisf[y]' a plaintiff's burden at the preliminary certification stage."  *Ikikhueme*, 2013 WL 2395020, at *2 (quoting *Myers v. Hertz Corp.,* 624 F.3d 537, 555 (2d Cir. 2010)).

In *Wang*, too, the motion for conditional certification was submitted after significant discovery, including depositions, and the plaintiffs adduced evidence that unpaid interns were substituted for paid employees. The plaintiffs submitted, among other things, (i) "job postings" for interns which consistently described the productive work the interns would perform, including by explicitly stating that interns would perform the same job duties as regular employees; (ii) e-mails which advised supervisors that unpaid interns should be substituted for paid employees to perform basic tasks, in an effort to reduce company costs; and (iii) deposition transcripts in which company officials testified that interns and employees performed many of the same duties. *See Wang v. Hearst Corp.*, No. 12 Civ. 793, Docket # 23 and Exhs. A-JJ attached thereto (June 7, 2012) (Sack Dec. ¶14 and Exh. J). Again, no such evidence exists here.

### B.   PLAINTIFF'S PROPOSED NOTICE AND OPT-IN PROCEDURE IS DEFECTIVE

In the unlikely event that the Court determines that notice is appropriate in this case, the notice Plaintiff proposes is improper in several respects.[20]

First, Plaintiff's proposed notice is overly broad and must be reformed.[21] The limited evidence submitted by Plaintiff relates only to portions of Defendants' internship programs in New York, and thus, any notice issued must be so limited.

Second, all references to "employment"/"employed"/"employ" as it relates to internship activities must be struck. Defendants adamantly deny that their interns are employees, nor has the Court made any such determination, and thus, the public notice should not appear to give the impression that the issue of intern vs. employee status has been resolved.

---

[20] If the Court decides that notice is appropriate, Defendants respectfully request that the parties be ordered to meet and prepare a mutually agreeable notice and consent to join form based upon the Court's certification order. In the event the parties cannot agree, Defendants request the opportunity to submit their own proposed notice and opt-in procedures.

[21] *See Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189, 197 (N.D.N.Y. 2009) (court retains discretion to reformulate proposed class).

_Third_, Plaintiff's request to post, e-mail, and text the notice is unwarranted.  Generally, first-class mailing is the preferred method to inform individuals of their ability to opt in to a collective action.  Alternative forms of notification should not be used unless the plaintiff presents facts showing that such methods are necessary.[22]  Plaintiff has made no such showing here.  Moreover, courts recognize that notification by email and text could create risks of distortion or misleading notification through modification by putative class members of the notice itself, and thus, absent evidence that the notice will not reach the putative class through mailing, e-mail should not be permitted.[23]

_Fourth_, Plaintiff's request for the issuance of a reminder notice should be denied because he has proffered no reason why a reminder is necessary in this case, and any such reminder "could potentially be interpreted as encouragement by the court to join the lawsuit." _Guzelgurgenli v. Prime Time Specials Inc._, 883 F. Supp. 2d 340, 357 (E.D.N.Y. 2012).

_Fifth_, the collective action period should be measured from the date of the Court's order granting Plaintiff's motion for conditional certification, not from the filing of the Complaint.[24]  A putative collective action member's claim is not tolled until the individual consents to join the action.  29 U.S.C. § 256; _Gordon_, 2009 WL 3334784, at *12.  The opt-in may therefore only obtain FLSA damages, at maximum, for the three-year period preceding the filing of the consent-to-join.  Sending notice to individuals who interned more than three years before the date of the Court's order and thus have no FLSA claim does not serve the interest of the individuals or the parties.  Plaintiff also has made no showing (nor can he) that equitable tolling is appropriate.

---

[22] _See Gordon v. Kaleida Health_, No. 08 Civ. 378S, 2009 WL 3334784, at *11-12 (W.D.N.Y. Oct. 14, 2009); _Hintergerger v. Catholic Health Sys._, No. 08-cv-380S, 2009 WL 3464134, at *13 (W.D.N.Y. Oct. 21, 2009).
[23] _See Gordon_, 2009 WL 3334784, at *11.
[24] _See Ritz v. Mike Rory Corp._, No. 12 Civ. 367, 2013 WL 1799974, at *3 (E.D.N.Y. Apr. 30, 2013).

<u>Sixth</u>, Plaintiff's request for personal home and cell phone numbers, e-mail addresses, and social security numbers should be denied, since he has demonstrated no need for this personal, private information at this stage of the case.[25]

<u>Seventh</u>, Defendants request that consent forms not be effective until filed with the Court and that the opt-in notice period be 45 days from the date that an agreed-upon notice is mailed.

Defendants reserve their remaining objections to Plaintiff's proposed notice and opt-in procedure until after the Court's decision on the instant motion, if necessary.

## <u>CONCLUSION</u>

Plaintiff has not carried his burden of demonstrating that he is similarly situated to the putative collective and a collective action should be conditionally certified.  His motion for conditional certification should therefore be denied.

Dated: New York, New York
February 7, 2014

Respectfully submitted,
VEDDER PRICE P.C.

By: /Laura Sack
Laura Sack
Lyle S. Zuckerman
Michael J. Goettig

1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700
lsack@vedderprice.com
lzuckerman@vedderprice.com
mgoettig@vedderprice.com
*Attorneys for Defendants*

---

[25] *See f*, 595 F. Supp. 2d at 198; *Gordon*, 2009 WL 3334784, at *11-12; *Hinterger*, 2009 WL 3464134, at *11; *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007).