```
E4adgrac
                        Conference
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

KYLE GRANT, individually and
on behalf of other persons
similarly situated who were
employed by WARNER MUSIC GROUP
CORP. and ATLANTIC RECORDING
CORPORATION,

                Plaintiffs,            New York, N.Y.

         v.                            13 Civ. 4449 (PGG)

WARNER MUSIC GROUP CORP., and
ATLANTIC RECORDING
CORPORATION,

                Defendants.
------------------------------x
                                       April 10, 2014
                                       10:48 a.m.
Before:

                 HON. PAUL G. GARDEPHE,

                                       District Judge

                        APPEARANCES

VIRGINIA & AMBINDER, LLP
     Attorneys for Plaintiffs
BY:  LLOYD R. AMBINDER
     LaDONNA M. LUSHER

LEEDS BROWN LAW, P.C.
     Attorneys for Plaintiffs
BY:  DANIEL H. MARKOWITZ

VEDDER PRICE P.C. (NY)
     Attorneys for Defendants
BY:  LYLE S. ZUCKERMAN
     MICHAEL J. GOETTIG
```

E4adgrac
                              Conference
1              THE CLERK:  I call the case of Grant versus Warner
2    Music Group Corporation, et al.
3              Is the plaintiff ready?
4              MR. AMBINDER:  Yes, your Honor.
5              THE COURT:  Please state your appearances.
6              MR. AMBINDER:  Lloyd Ambinder, Virginia & Ambinder.
7              Good morning, your Honor.
8              THE COURT:  Good morning.
9              MS. LUSHER:  LaDonna Lusher, Virginia & Ambinder.
10             Good morning, your Honor.
11             THE COURT:  Good morning.
12             MR. MARKOWITZ:  Daniel Markowitz, Leeds Brown Law.
13             Good morning your Honor.
14             THE COURT:  Good morning.
15             THE CLERK:  Defendants ready?
16             MR. ZUCKERMAN:  Good morning.  Lyle Zuckerman, the law
17   firm of Vedder Price P.C., on behalf of the defendants.
18             MR. GOETTIG:  Good morning, your Honor.  Michael
19   Goettig, Vedder Price P.C., on behalf of the defendants.
20             THE COURT:  Good morning.
21             All right.  On my list for today's conference I have
22   three issues.  You may have more.
23             There is an issue that has arisen about whether the
24   plaintiffs are entitled to a jury trial, and the issue arises
25   because the complaint did not include a jury demand.  So that's

1    an issue.  The second issue is a motion for court-authorized

2    notice, which is pending and which we are prepared to resolve

3    shortly.  The third issue, and it is an overarching issue, is

4    what the parties' wishes are with respect to staying the case.

5            We were last together in December, and there was

6    discussion at that time about the fact that there are two cases

7    pending in the Second Circuit that address the basic question

8    that is at issue in this case, which is whether unpaid interns

9    qualify as employees under the Fair Labor Standards Act.  It

10   was the view of the parties at that conference that the Second

11   Circuit's decisions in those cases could have a significant

12   impact on the direction of the litigation here.  Accordingly, I

13   did not enter a case management plan after that conference.

14           So the first question, it seems, that we should

15   address is what the parties' views are now about whether it

16   makes sense to wait and see what the Second Circuit is going to

17   do or whether it is more practical to proceed?

18           So let me hear from plaintiffs on that subject.  What

19   are your views?

20           MR. AMBINDER:  I'm Lloyd Ambinder for the plaintiffs.

21           We are generally not inclined to stay the case.  This

22   exact issue came up before Judge Daniels in a related action

23   and we discussed it at length.  The Judge declined to stay the

24   case.

25           The matter hasn't been briefed.  I don't think it is

1    going to be fully briefed, I think, until July, and I don't

2    believe there will be an oral argument -- I can't guess when

3    the Second Circuit will take oral argument, but it will

4    probably be later in the fall and the decision may not come out

5    until the middle of next year.  We said in the other matter,

6    and I will say it again here, that we don't believe that this

7    matter should be stayed while that is pending, because we

8    respectfully believe that whatever the Second Circuit decides

9    will not negate this case entirely, that it will still go

10   forward as a misclassification case with the merits of the

11   individual claimants perhaps still intact.  So we prefer to see

12   the case go forward before your Honor, if possible.

13            THE COURT:  All right.

14            What is the defendants' viewpoint?

15            MR. ZUCKERMAN:  Your Honor, I have had a chance to

16   read many of the briefs that were submitted to the Second

17   Circuit recently, I believe, on April 7th, including from the

18   parties who had received permission to file briefs as amicus

19   curiae.

20            The two primary decisions that are up for appeal -- up

21   for review by the Second Circuit include the substantive

22   analysis as to what factors will be determined in deciding

23   whether an unpaid intern is a trainee under the law or an

24   employee under the law.  And there is a pretty wide divergence

25   in the standards that have been proposed to the Second Circuit.

1     That will have an impact -- the Second Circuit's decision, that

2     is, to some extent -- to a large extent on the scope of

3     discovery in all of these cases concerning internships.

4              And so if this Court were inclined to certify this

5     class conditionally for purposes of the FLSA going forward and

6     we engage in substantive discovery, we could be talking about,

7     if we take the defendants' view of the cases up on appeal, that

8     is the standards that would applied as a substantive basis, a

9     much, much broader array of discovery than probably would be --

10    that likely would be permissible if the Second Circuit rules in

11    favor of the plaintiffs and upholds the federal Department of

12    Labor's six-factor test very strictly.

13             So waiting a few months to get a decision from the

14    Second Circuit would conserve both the parties' and the Court's

15    resources in this case.  We would have a multi-thousand-person

16    case here which, as we briefed to the Court, is not a simple

17    misclassification case where you have just assistant managers

18    across the country.  We've got folks doing completely different

19    things, whether it is educational seminars, other fun

20    activities, some substantive duties for which they were

21    supervised.  Their individualized circumstances are so diverse

22    that the scope of discovery -- it is going to be broad as it

23    is.  I mean, that is why we don't think 216(b) conditional

24    certification is appropriate.  But if the Court disagrees with

25    us, there could be significant time and cost savings in waiting

1    to hear what the Second Circuit has to say about what the

2    underlying substantive standard is so that we could apply that

3    to discovery.

4            The second issue up for appeal at the Court of Appeals

5    is what is the appropriate standard for 216(b) conditional

6    certification.  Now, in the first case it was post discovery.

7    So I understand it is a different standard than what the Court

8    would be engaged in here because it is a prediscovery, but I

9    think it will be instructive.

10           And these are cases of first impression.  It is not a

11   typical misclassification case.  It is not -- "intern" doesn't

12   mean anything, your Honor.  Intern is a made up word.  It

13   doesn't appear anywhere in the FLSA.  It doesn't appear

14   anywhere in the state labor law.  It doesn't appear anywhere in

15   the regulations.  It doesn't provide anyone a sense -- a common

16   sense of what the generalized duties, standards, participation

17   in the programs are.  We all know kind of what an assistant

18   manager probably does.  We all know kind of what a laborer on a

19   construction site does.  "Intern" doesn't have any of those

20   guide points to guide us.

21           THE COURT:  Let me ask you a question.  Is there

22   reason to believe that the six-factor test, that the Circuit is

23   going to decide that that is not the right test?

24           MR. ZUCKERMAN:  Absolutely.  That is such a narrow

25   standard.  When you long at <u>Walling v. Long Island Rail Road</u>,

1   the Supreme Court case, they are looking at the totality of the
2   circumstances to include way more than what is in that
3   six-factor test.  In fact, your Honor, the New York State
4   Department of Labor has a eleven-factor test with various
5   subparts to it.  Even the state law, which generally is more
6   stringent and employee friendly, has a test that's broader than
7   what's in the federal law.
8           So I think there is a very good chance that the court
9   is going to take a real world view of this, because these are
10  internships, as opposed to employment situations.  Employees
11  who ordinarily receive some tangential benefit just by, quote,
12  being there at the employer, which is an argument that
13  defendants have put up in these sorts of cases before, that
14  benefit is completely different than the benefit given to a
15  freshman, a sophomore, a junior in college who otherwise have
16  no access whatsoever to the labor market.
17          So I cite that just as one example of a situation in
18  which a standard of an analysis that has been applied with
19  respect to employees may not apply with respect to interns, and
20  the Court could say, yeah, you've got to take that into
21  account.  So when you are weighing who gets the greatest
22  benefit, one of the things you have to look at is that
23  19-year-old never would have gotten into Warner Music Group's
24  main offices, never would have gotten into a production studio.
25  They don't give public tours of that.  And that is a primary

E4adgrac
                            Conference

1    benefit, and it is being given credit by institutions of higher
2    education, who, as explained in our 216(b) brief to your Honor,
3    those educational decisions are given extraordinary deference
4    in the State of New York.
5             When you challenge an educational decision of a
6    college, it is only pursuant to Article 78 of the CPLR, in
7    which we are given an arbitrary and capricious standard of
8    review.  Those sorts of things need to be weighed by the Second
9    Circuit, otherwise we are really sort of at sea as to what the
10   analysis is.
11            THE COURT:  What do you say, Mr. Ambinder?
12            MR. AMBINDER:  Your Honor, you asked me a direct
13   question and that is should the matter be stayed, and my answer
14   was I do not believe it should be stayed.  We all know that on
15   a 216(b) motion, the goal is to get a notice out as quickly as
16   possible so that people have knowledge of the action and an
17   ability to participate in this case.
18            I didn't think we were going to start arguing the
19   merits of the underlying 216(b) itself.  I am happy to do that.
20   But at the end of the day, I disagree with counsel.
21            I agree on one point.  There is no thing called an
22   internship.  There is nothing in the law that says intern.  It
23   is a trainee test.  The trainee test came out of _Walling_ -- the
24   six-part test was created under the _Walling_ decision back in
25   1947.  Then the Department of Labor came out with its own

E4adgrac
                              Conference

1    six-part test.  It was codified.

2           That has been on the books for 70 years, 60 years, and

3    I simply do not believe -- and I am not going to try to engage

4    in conjecture and tell this Court what the Second Circuit is

5    going to do, but if you look around the country, you look at

6    the decisions around the country generally related to trainee

7    cases, they haven't changed the Walling standard.  And I just

8    don't see the Second Circuit taking -- jumping off a cliff and

9    changing it completely and entirely.  It would still be, to me,

10   a totality of circumstances test, and that is what is going to

11   be used.

12          So at the end of the day this case will probably still

13   be here.  It will not be negated.  It will not be dismissed as

14   a matter of law because the Second Circuit has rendered a

15   decision.  So discovery will still need to take place, and

16   people should still have an opportunity to know there is a case

17   and if you would like to participate, you can file this piece

18   of paper and nothing more.  And I think the construction,

19   discovery and a notice, to accommodate that schedule that is in

20   the Second Circuit and know where we stand at the end of the

21   day.

22          THE COURT:  Well, let me say a couple of things.

23          I tend to agree with Mr. Ambinder that it seems

24   unlikely that this case is going to disappear no matter what

25   the Second Circuit does.  I am concerned by defense counsel's

  1 argument that it is going to be hard to know what discovery to

  2 take until the Second Circuit has spoken, and counsel is going

  3 to have to err on the side of very broad discovery.

  4    So, Mr. Ambinder, you don't disagree with that, do

  5 you?

  6    MR. AMBINDER:  I don't think it is going to be as

  7 complex as counsel is making it out to be.  We know that

  8 everybody was classified as an intern, or -- call it an intern

  9 because that is what we call it.  We are going know where they

 10 worked.  We are going to know how many credits, if at all, they

 11 received.  We are going to know generally what their schedules

 12 were.  We are going to know if they received a stipend or not

 13 or if they received any kind of pay or not.  I don't think it

 14 is going to be that difficult to ascertain what took place

 15 within certain divisions in this defined collective for now.

 16    I am not even getting to the Rule 23 class

 17 certification issue for now.  I think that counsel is making it

 18 out to be far more than it needs to be.  We are all experienced

 19 attorneys.  We know how to take discovery in wage-and-hour

 20 cases, and if we hit bumps in the road, they can be resolved by

 21 the Court, between ourselves, or perhaps by a magistrate.

 22    I can't see us asking for page after page after page

 23 after page of documents, and I can't see us asking for more

 24 than your basic 25 interrogatories.  And I think we will be

 25 able to see where we stand once at least individuals have an

E4adgrac                    Conference

1   opportunity to opt in, and I would call that my sampling group,
2   to see where we stand.  I don't see discovery being that
3   complex, particularly since there aren't a lot of documents in
4   these cases.
5            THE COURT:  Explain to me the legal significance of
6   whether the kids got credit, academic credit, or not.
7            MR. AMBINDER:  It is an element of the six-part test.
8   I will tell you what I believe.  We all know this is a six-part
9   test.  It is a defense.  It has to be factored in.
10           The way I see it is if one of these kids going to a
11  private school, paying $40,000 in tuition for the privilege to
12  work at a defendant as an intern full-time, I don't see how
13  much of a factor that really is if in fact the college did
14  little, if anything, to oversee that the internship was
15  genuinely a structured educational program.  In most cases the
16  schools did not do that.
17           There was actually an editorial in The New York Times
18  two Sundays ago about this exact issue, that NYU and Columbia
19  are now going to impose new policies and regulations with
20  respect to internships because the matter has gotten so out of
21  control.
22           These kids do internships for school credit.  The
23  schools receive the payment for those credits, but the school
24  does very little to see if that student is actually part of a
25  structured educational program.

Conference

1        So is it a factor as part of the six-part test?  Yes,
2   it is.  Do I really believe these schools do little, if
3   anything, to oversee and make sure that there is a structured
4   educational program?  I believe they don't.  So that is one of
5   those elements that comes into the test.
6        THE COURT:  Does the defense want to address that
7   issue?
8        MR. ZUCKERMAN:  Your Honor, real briefly.
9        First of all, as your Honor may or may not know, the
10  same counsel are involved in a case involving Viacom before
11  Judge Furman, and there is evidence in both cases --
12       THE COURT:  And by the way, that -- well, let me ask
13  you:  Is discovery proceeding in that case?
14       MR. ZUCKERMAN:  Well, we've received the order on
15  216(b) conditional certification just recently.  So whether or
16  not there will be a motion to stay has not yet been decided by
17  my client.  So I haven't communicated anything to this Court on
18  that issue.
19       THE COURT:  But Judge Furman has issued a case
20  management plan, right?
21       MR. ZUCKERMAN:  Correct.
22       THE COURT:  And presumably it includes dates for
23  discovery, right?
24       MR. ZUCKERMAN:  It does.  Of course, that was set at
25  the outset of the case, just like your Honor's, and before we

1    had --

2               THE COURT:  Well, I haven't entered a case management
3    plan.

4               MR. ZUCKERMAN:  Correct.  Absolutely.

5               THE COURT:  Go ahead.  I am sorry.

6               MR. ZUCKERMAN:  No.  That is OK.

7               The issue of credits raises a couple of points I would
8    like to raise with you.

9               First of all, there is evidence in both of these cases
10   that colleges did require papers, journals, etc., which were
11   reviewed.  In fact, in this cases, both the main plaintiffs and
12   the opt-in plaintiffs, even though they submitted letters of
13   credit to our client saying they were eligible to receive
14   credits, they never actually were awarded the credits.  I would
15   like to know why, but I suspect they didn't fulfill some of
16   their obligations under the plan.  So I am speculating to some
17   extent but certainly not as much as plaintiff's counsel was
18   just broadly brushing the internship programs in this country.

19              But the broader issue that that raises, your Honor, is
20   that these are the sorts of things we would have to get into in
21   discovery, or maybe not; I don't know.  And we're not going to
22   know until the Second Circuit speaks.

23              Now, if the Court has issues about the rights of
24   prospective class members taken away with the statute of
25   limitations, if your Honor were inclined to grant a stay, we

E4adgrac
                              Conference

1    could certainly address that issue.
2             THE COURT:  Well, as I said, where I'm at is I do
3    think we are a long ways away from a Second Circuit decision.
4    And if I thought it would have a decision in the next two or
5    three months, I would say, well, let's wait.  But we're nowhere
6    near that, and I don't think Mr. Ambinder's estimate of when we
7    might get a decision is unreasonable.  I think it is going to
8    be a long time.
9             And as I said earlier, I do believe the case is going
10   to proceed in some form anyway regardless of what the Second
11   Circuit does.  I don't like people to waste money.  So it does
12   concern me that the discovery may not be as focused as it would
13   be if we had the benefit of the Second Circuit's decision.  But
14   I have to balance that against the case essentially grinding to
15   a halt for a year or more.  And so my inclination is for it to
16   proceed.
17            So let me turn to the issue I started with, which is
18   this whole question of the jury demand.  Let me say on that
19   subject that the complaint does not include a jury demand, and
20   the civil cover sheet that was filed when the complaint was
21   filed indicates that the plaintiff is not seeking a jury.
22   There was a proposed case management plan submitted jointly,
23   and that proposed case management plan indicated the case was
24   not to be tried to a jury.
25            At our initial conference on December 5th, I inquired

whether the plaintiff sought a jury trial, because I had noticed on the proposed case management plan it indicated that the case was not to be tried to a jury. My notes indicate that the plaintiffs indicated that this was a mistake and that they intended for the case to be tried to a jury.

I did not enter a case management plan after that conference for the reasons that we've discussed, which is that the parties, as well as myself, thought back in December that it might make sense to see what was going to happen with the Second Circuit cases involving unpaid interns. So in light of that I did not enter a case management plan.

Consistent with an order that I issued on December 9th, the defendants filed their answer on December 23rd. I received a letter motion from the plaintiffs, dated January 28th, requesting a premotion conference or for permission to file an amended civil case management plan to reflect that the plaintiffs wish that the case be tried to a jury.

The defendants have submitted opposition, and they argue that under Federal Rule of Civil Procedure 38(b) the plaintiffs had 14 days from the filing of defendants' answer to serve a written jury demand and that because they did not do that they have waived their right to a jury trial.

Now, looking at Rule 38(b), it does say that the party seeking a jury has to make a written demand to that effect and

1   that that demand can be included in a pleading or it can be
2   included in another document, but that the deadline for that
3   demand is, and I quote, no later than 14 days after the last
4   pleading.  Close quote.
5           So it does seem to me that at present there is a good
6   argument that the plaintiff has waived.  So I am prepared to
7   set a briefing schedule on that issue if the plaintiffs have in
8   fact decided that they want to proceed before a jury.
9           So, Mr. Ambinder, what is your pleasure?  Have you
10  decided that you want a jury trial here, and do you wish to
11  litigate the issue of waiver?
12          MR. AMBINDER:  We would like to brief the matter, your
13  Honor, if that is OK.
14          THE COURT:  All right.  How long do you need -- it is
15  your motion, so how long do you need to get it in?
16          MR. AMBINDER:  Two weeks.
17          THE COURT:  All right.  Two weeks.
18          And how long do you want for the opposition?
19          MR. ZUCKERMAN:  One week would be fine, your Honor.
20          THE COURT:  All right.  And, Mr. Ambinder, I will give
21  you a week to reply.
22          MR. AMBINDER:  That is fine.
23          THE COURT:  So we will issue a scheduling order that
24  has all the dates with respect to the briefing.
25          Are there other issues that we should discuss this

E4adgrac                     Conference

1      morning?

2              (Pause)

3              MR. AMBINDER:  Well, you have the issue of the

4      consolidation of the New York action.  Our motion to remand has

5      been denied, so I guess what we have to do is -- I am going to

6      suggest to the Court that we will meet and confer with

7      defendants' counsel with respect to amending the pleadings and

8      going forward from there.

9              Is there anything I am missing?

10             (Pause)

11             THE COURT:  So is the Henry matter, are you suggesting

12     that that is going to be consolidated with this case?

13             MR. AMBINDER:  I believe that is the best way to go

14     forward.

15             THE COURT:  It makes sense to me.

16             MR. AMBINDER:  Yes.

17             MR. ZUCKERMAN:  Obviously contingent on a Rule 216(b)

18     ruling that would make it otherwise amenable, we would seem to

19     think so.

20             THE COURT:  Right.

21             MR. ZUCKERMAN:  And one issue I haven't thought

22     through, Judge, is whether it is consolidated for all purposes

23     or discovery purposes.  I just haven't thought that through and

24     discussed it with the client yet.  But the purpose of having it

25     removed to federal court obviously was to make it as seamless

                           Conference

1    as possible.
2              THE COURT:  All right.  So why don't we say in two
3    weeks' time you will let me know what your position is on
4    consolidation.  That will be part of the scheduling order also.
5              We will get out our decision on the Court-authorized
6    notice issue.  As I mentioned, we are of course aware that that
7    is pending before us, and we will try to get you a decision
8    soon -- quickly.
9              So I guess what remains is to talk about what the case
10   management plan should provide for in terms of discovery.  And
11   I must confess, I did not look at what you had submitted before
12   when I came down here.  So can someone acquaint me with what
13   you had suggested so many months ago in terms of the case
14   management plan?
15             MS. LUSHER:  Your Honor, we actually have served some
16   initial -- we've served some initial discovery requests and
17   have exchanged responses.  The defendants just served us with
18   some discovery requests for the opt-in plaintiffs, and we are
19   in the process of responding to those.
20             The initial case management plan has depositions to be
21   completed by August 29th.  I think that that may fluctuate
22   depending on what happens with the 216(b) after that notice
23   goes out.  We have already been engaged in some paper
24   discovery.
25             THE COURT:  All right.  Do you believe the dates that

1    are in the original proposed case management plan need to be
2    adjusted, they need to be bumped forward in light of the fact
3    that we've lost three or four months?
4              MS. LUSHER:  I believe that they will have to be
5    extended, particularly if we consolidate the two cases.  And we
6    work very well with opposing counsel, and I think that we could
7    come up with something where we could submit to your Honor to
8    decide what we think we might need.
9              THE COURT:  So why don't we do that.  I am giving you
10   two weeks to tell me what your position -- what I hope will be
11   your joint position on consolidation.  So when you tell me
12   that, you can submit a proposed case management plan and then I
13   will act on it.
14             Does that make sense?
15             MR. ZUCKERMAN:  Yes, your Honor.
16             MS. LUSHER:  Yes.
17             THE COURT:  All right.  Other things we should talk
18   about now?
19             (Pause)
20             MR. AMBINDER:  Nothing here, your Honor.
21             THE COURT:  OK.
22             MR. ZUCKERMAN:  We have nothing.  There has been no
23   disputes.  We have been getting along --
24             THE COURT:  You have been getting along great?
25             MR. ZUCKERMAN:  Famously.

E4adgrac
Conference

1       THE COURT:  All right.  Well, that's good to hear and
2  I hope that continues, although I'm sure you won't agree on
3  everything.
4       If there is nothing else, I wish you all a good day.
5       MR. AMBINDER:  All right.  Thank you, your Honor.
6       MR. ZUCKERMAN:  Thank you, your Honor.
7
8                              - - -
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25