UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KYLE GRANT, individually and on behalf of
other persons similarly situated who were
employed by WARNER MUSIC GROUP
CORP. and ATLANTIC RECORDING
CORPORATION,

                              Plaintiffs,

           - against -

WARNER MUSIC GROUP CORP., and
ATLANTIC RECORDING CORPORATION,

                              Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 13, 2014

**MEMORANDUM
OPINION & ORDER**

13 Civ. 4449 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

           In this putative collective action, Plaintiff Kyle Grant and several opt-in plaintiffs

assert minimum wage and overtime claims under the Fair Labor Standards Act ("FLSA"), 29

U.S.C. §§ 201 et seq., on behalf of themselves and others similarly situated.  Plaintiffs claim that

they performed work as employees of Defendants but were misclassified as exempt from

minimum wage and overtime requirements.

           Plaintiffs now seek to disseminate court-authorized notice of this case to members

of the putative collective action.  See Dkt. No. 28.  Defendants oppose Plaintiffs' application,

arguing that Plaintiffs have not demonstrated (1) the existence of an unlawful nationwide

internship policy; or (2) that they are similarly situated to each other or to members of the

putative collective.  (Def. Br. (Dkt. No. 31) at 11-22)

           For the reasons set forth below, Plaintiffs' motion for court-authorized notice will

be granted.

## BACKGROUND

On June 27, 2013, Plaintiff Kyle Grant commenced this collective action on behalf of himself and others similarly situated against Warner Music Group Corporation ("WMG") and Atlantic Recording Corporation ("Atlantic").[1]  (Cmplt. (Dkt. No. 1) ¶ 1)  Grant, a former student intern for WMG subsidiary Warner Bros. Records ("WBR"), alleges that Defendants misclassified him and other similarly situated persons as unpaid interns exempt from statutory minimum wage and overtime requirements.  (Id. ¶¶ 11, 32-33)  The misclassification purportedly reflects a nationwide employment policy that governs internship programs at all of Defendants' U.S. locations.  (Id. ¶¶ 22)

Grant interned in WBR's Radio Promotions Department in Manhattan from August 2012 until April 2013.  (Grant Decl. (Dkt. No. 30-2) ¶ 3; Cmplt. ¶¶ 10, 34, 38)  Grant typically worked five days a week from 9:30 a.m. until 8:00 p.m., for a total of approximately fifty hours per week, but he received no compensation.  (Grant Decl. (Dkt. No. 30-2) ¶¶ 4-6; Cmplt. (Dkt. No. 1) ¶¶ 33-35, 37-38)  His work consisted of routine office tasks, such as answering telephones, making photocopies, making deliveries, preparing coffee, and organizing and cleaning the office.  (Grant Decl. (Dkt. No. 30-2); Cmplt. (Dkt. No. 1) ¶ 36)  Although Grant was a student at the time, he claims that he received no academic credit for his internship.  (Grant Decl. (Dkt. No. 30-2) ¶ 12)

---

[1]  The Complaint states that this action is brought on behalf of persons currently and formerly employed by "entities affiliated with or controlled by Warner Music Group Corp. and Atlantic Recording Corporation."  (Cmplt. (Dkt. No. 1) ¶ 1)  Atlantic is a record label and subsidiary of WMG.  (Declaration of Atlantic Human Resources Coordinator Monica Barrios ("Barrios Decl.") (Dkt. No. 32-1) ¶ 2)

In support of their motion, Plaintiffs have submitted declarations from Grant and three opt-in plaintiffs who interned for Defendants or their subsidiaries.[2]  Opt-in plaintiff Samuel Westerkon interned five days a week in Atlantic's Product Development and Business Analytics Department in Manhattan between June 2012 and August 2012. (Westerkon Decl. (Dkt. No. 30-3) ¶ 3)  His duties included preparing business analytics, proofreading, and assisting in product development.  (Id. ¶¶ 3, 7)  Westerkon asserts that he performed the same work as paid employees in his department.  (Id. ¶ 9)  Opt-in plaintiff Evan Brieff interned in WBR's "Promotions and Video Departments" from September 2012 to May 2013. (Brieff Decl. (Dkt. No. 35-1) ¶ 3)  Brieff worked from 10:00 a.m. to 6:00 p.m. two days a week; among other things, Brieff worked on software, answered phones, and made photocopies.  (Id.)  Brief, like Westerkon, claims to have "performed some of the same work as paid employees."  (Id. ¶ 9)  Danielle Grubb was an intern in the "Urban Section of the A&R Department" in November 2013. (Grubb Decl. (Dkt. No. 35-2) ¶ 3)  She worked two days a week from 11:00 a.m. to 5:00 p.m.  Her duties consisted of, inter alia, answering phones and other administrative work.  (Id. ¶ 6)  Grubb also claims to have done work that was also performed by paid employees.  (Id. ¶ 8)

All of the declarants deny receiving academic credit for at least part of their internships, and all claim to have received little to no supervision.  (See, e.g., Grant Decl. (Dkt. No. 30-2) ¶ 12 ("I did not receive any academic credit, and my school did not oversee my

---

[2]  Plaintiffs have also submitted a declaration from non-party Justin Henry.  Henry is the named plaintiff in a parallel action brought under the New York Labor Law. See Henry v. Warner Music Group Corp. et al., 13 Civ. 5031 (PGG).  Henry is not a plaintiff in the instant case because his claims pre-date the three-year statute of limitations applicable to FLSA actions. Because Henry worked for Defendants prior to the putative class period, his experience is not illustrative of that of members of the putative collective action.  Accordingly, this Court has not considered Henry's declaration in determining whether dissemination of court-authorized notice is appropriate.

internship at WMG."), ¶ 9 ("Throughout my internship, my supervisors exercised very little oversight over me, and basically gave me my assignments and expected me to complete them on my own.")) The declarants also claim to have personal knowledge of other interns who performed similar duties for Defendants and who likewise did not receive compensation or academic credit. (Grant Decl. (Dkt. No. 30-2) ¶¶ 12-14; Westerkon Decl. (Dkt. No. 30-3) ¶¶ 13-15; Brieff Decl. (Dkt. No. 35-1) ¶¶ 13-15; Grubb Decl. (Dkt. No. 35-2) ¶¶ 12)

Plaintiffs allege that Defendants operate a centralized, nationwide internship program. In support of this allegation, Plaintiffs have submitted excerpts from WMG's website that describe the internship program. To obtain an internship at WMG or one of its subsidiaries, a student must apply through a centralized website, regardless of the department or office location in which the student is seeking an internship. (WMG Internship Description, Declaration of Lloyd Ambinder ("Ambinder Decl.") (Dkt. No. 30-5), Ex. E)

The WMG website emphasizes that internships are unpaid, and sets forth policies that are applicable to all WMG interns, including a requirement that interns devote a minimum of fifteen hours per week to their internship. (Id.) Descriptions of particular types of internships are identical, regardless of the department or the location of the internship. (Ambinder Decl. (Dkt. Nos. 30-6 to 30-12), Ex. G 1-6 (identical Internet internship postings for California, Illinois, Miami, Nashville, New York, and Utah)) WMG and its subsidiaries also use a standard application for all internships. (WMG Internship Application, Ambinder Decl. (Dkt. No. 30-6), Ex. F)

4

## DISCUSSION

I. **COLLECTIVE ACTIONS AND COURT-AUTHORIZED NOTICE**

### A. **Legal Standard**

Under the FLSA, an employee may sue on behalf of himself and all other employees who are "similarly situated." 29 U.S.C. § 216(b). The FLSA permits those similarly situated employees to "opt in" to the litigation and become party plaintiffs by filing a written consent form with the court. See Damassia v. Duane Reade, Inc., 04 CIV. 8819(GEL), 2006 WL 2853971, at *2 (S.D.N.Y. Oct. 5, 2006) (citing Masson v. Ecolab, Inc., No. 04 Civ. 4488 (MBM), 2005 WL 2000133, at *13, (S.D.N.Y. Aug. 17, 2005)). In contrast to the procedures for a class action under Fed. R. Civ. P. 23, "only plaintiffs who affirmatively opt in can benefit from the judgment or be bound by it." Id. (citing Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 103-04 (S.D.N.Y. 2003)).

Although Section 216(b) does not explicitly address court-authorized notice, "it is 'well settled' that district courts have the power to authorize an FLSA plaintiff to send such notice to other potential plaintiffs." Gjurovich, 282 F. Supp. 2d at 104 (quoting Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (additional citations omitted)); see also Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008) ("'[a]lthough one might read the [FLSA], by deliberate omission, as not providing for notice, . . . it makes more sense, in light of the "opt-in" provision of § 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting notice in an appropriate case'" (quoting Braunstein v. E. Photographic Labs., Inc., 600 F. 2d 335, 336 (2d Cir. 1978) (per curiam))). Indeed, because the three-year statute of limitations for an FLSA claim begins to run as soon as a non-named plaintiff opts-in to the litigation, courts routinely approve court-authorized notice in

5

order to ensure that the rights of potential claimants do not expire during the discovery process. See, e.g., Khamsiri v. George & Frank's Japanese Noodle Rest. Inc., 12 CIV. 265 PAE, 2012 WL 1981507, at *2 (S.D.N.Y. June 1, 2012) ("[C]ourt-authorized notice is appropriate[] to prevent erosion of claims due to the running statute of limitations. . . .").

Courts in this Circuit follow a two-step process when presented with a motion for court-authorized notice. "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Myers v. Hertz Corp., 624 F.3d 537, 555 (2010). The second and later step requires the court to decide "on a fuller record, . . . whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Id. (emphasis added).

To satisfy their initial burden, plaintiffs need only make "a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law." Id. (quoting Sbarro, 982 F. Supp. at 261). While "[t]he 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,'" id. (quoting Dyback v. State of Fla. Dep't of Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991), "it should remain a low standard of proof because the purpose of this stage is merely to determine whether 'similarly situated plaintiffs do in fact exist." Id. (citing Sbarro, 982 F. Supp. at 261) (emphasis in original); accord Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) ("Plaintiff's burden is minimal because the determination that the parties are similarly situated is merely a preliminary one."). Plaintiffs need only offer "'substantial allegations' of a factual nexus between [them] and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation." Davis v. Abercrombie & Fitch Co., 08 CIV 1859(PKC), 2008 WL 4702840, at *9

6

(S.D.N.Y. Oct. 23, 2008) (quoting Ayers v. SGS Control Servs., Inc., No. 03 Civ. 9078
(RMB)(RLE), 2004 WL 2978296, at *5 (S.D.N.Y. Dec. 21, 2004).

   When evaluating whether court-authorized notice is appropriate, "the court does
not resolve factual disputes, decide ultimate issues on the merits, or make credibility
determinations." Davis, 2008 WL 4702840, at *9 (citing Lynch v. United Servs. Auto. Ass'n,
491 F. Supp. 2d 357, 368-69 (S.D.N.Y. 2007)); see also Francis v. A&E Stores, Inc., No. 06 Civ.
1638 (CS)(GAY), 2008 WL 4619858, at *2 (S.D.N.Y. Oct. 15, 2008) ("Plaintiffs must make 'a
modest factual showing sufficient to demonstrate that they and potential plaintiffs together were
victims of a common policy or plan that violated the law,' but the merits of plaintiff's claims are
not evaluated until later in the litigation." (quoting Sbarro, 982 F. Supp. at 261-62). Indeed, in
considering such a motion, "[a] court need not evaluate the underlying merits of a plaintiff's
claims. . . ." Damassia, 2006 WL 2853971, at *3 (citing Scholtisek v. Eldre Corp., 229 F.R.D.
381, 391 (W.D.N.Y. 2005); Gjurovich, 282 F. Supp. 2d at 105; Sbarro, 982 F. Supp. at 262).
Because courts do not weigh the merits of a plaintiff's claim, extensive discovery is not
necessary at the notice stage. See Masson, 2005 WL 2000133, at *15 (noting that defendant's
stated need for "extensive" discovery does "not bear on whether this case can proceed as a
collective action"). Plaintiffs may satisfy their "minimal" burden by relying on their own
pleadings and affidavits, or the affidavits of potential members of the collective action. Anglada
v. Linens 'N Things, Inc., No. 06 Civ. 12901(CM)(LMS), 2007 WL 1552511, at *4 (S.D.N.Y.
Apr. 26, 2007).

   The standard for class certification under Federal Rule of Civil Procedure 23 is, of
course, not relevant to an FLSA collective action. Unlike under Rule 23, "'no showing of
numerosity, typicality, commonality, or representativeness need be made.'" Iglesias-Mendoza v.

La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007) (quoting Young v. Cooper Cameron

Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005)).  As a result, the "similarly situated" standard for

authorizing notice to potential opt-in plaintiffs in an FLSA collective action is "considerably

more liberal than class certification under Rule 23."  Id.

      "Plaintiffs who opt in to a collective action after a court authorizes notice do not

necessarily remain parties to the action through trial.  After discovery, courts typically engage in

a 'second tier' of analysis to determine on a full record – and under a more stringent standard –

whether the additional plaintiffs are in fact similarly situated. . . . If the factual record reveals that

the additional plaintiffs are not similarly situated to the original plaintiffs, the collective action is

'decertified,' and the claims of the opt-in plaintiffs are dismissed without prejudice."  Damassia,

2006 WL 2853971, at *3 (citing Lee, 236 F.R.D. at 197; Scholtisek, 229 F.R.D. at 387)).

### B.   Analysis

      Plaintiffs have met their initial burden by proffering sufficient evidence of an

unlawful policy directed at a class of similarly situated persons.  Accordingly, court-authorized

notice to members of the putative collective action is appropriate.

      As an initial matter, "[c]ourts regularly rely on plaintiffs' affidavits and hearsay

statements in determining the propriety of sending notice" in FLSA collective actions.  Salomon

v. Adderley Indus., 847 F. Supp. 2d 561, 563-64 (S.D.N.Y. 2012); see also Indergit v. Rite Aid

Corp., 08 CIV. 9361 (PGG), 2010 WL 2465488, at *5 (S.D.N.Y. June 16, 2010) (authorizing

notice to Rite Aid managers based on plaintiffs' affidavits and company's nationwide job

descriptions); Sipas v. Sammy's Fishbox, Inc., No. 05 Civ. 10319, 2006 WL 1084556, at *2

(S.D.N.Y. Apr. 24, 2006) (authorizing notice to parking lot attendants based on plaintiffs'

affidavits).  Here, Plaintiffs allege that Defendants improperly classified them and 3,000 other

8

students as unpaid interns, thus depriving them of minimum wages and overtime pay as required by law.

In support of their claims, Plaintiffs have submitted declarations from Grant and three other former unpaid interns of WMG demonstrating that (1) declarants all performed the same type of work as paid employees in the departments in which they worked; and (2) the declarants – for at least part of their internships – received neither compensation nor academic credit. Plaintiffs have also submitted evidence suggesting that their work conditions were the product of a nationwide internship policy at WMG. (See Ambinder Decl. (Dkt. No. 30), Ex. B-G) Plaintiffs' exhibits indicate that all students seeking an internship must complete a standard application, and that internship applications flow through a common website. (Id., Ex. F) Plaintiffs' exhibits also show identical job descriptions for unpaid internships throughout the United States, regardless of the internship's location. (Id., Ex. G1-G6 (showing identical website postings for California, Illinois, Miami, Nashville, New York, and Utah internships). The internship descriptions indicate that all intern applicants must meet the same basic criteria and are subject to the same general policies. (Id. (explaining that interns must be 18 years old, complete a successful background check, be enrolled at an accredited college, and make a 15 hour per week commitment ("Every intern is assigned a special project that will assist them in increasing their understanding of how each department operates. Warner Music Group values its interns; as such we have developed an Intern Bill of Rights which is presented to both interns and supervisors to ensure a mutually rewarding experience."))) Defendants' centralized website also provides a general description of internships emphasizing that all internships are unpaid. (Id., Ex. E)

9

From this evidence, it is reasonable to infer that the policy of classifying student workers as unpaid interns, and thus exempt from the FLSA's wage and overtime requirements, reflects a national, company-wide policy.

Defendants argue, however, that this evidence is insufficient because it does not establish that members of the putative collective "were victims of a common policy or plan that violated the law." Amendola, 558 F. Supp. 2d at 467 (emphasis added). Defendants suggest that Plaintiffs' right to compensation will turn on whether they are properly classified as employees under the FLSA or fall within the "trainee" exception articulated in Walling v. Portland Terminal Co., 330 U.S. 148 (1947). (Def. Br. (Dkt. No. 31) at 16). The U.S. Department of Labor has developed a six-factor test based on Walling for distinguishing trainees from employees.[3] While "[t]he Second Circuit has not addressed the standard governing the trainee exception, . . . it is clear that [the DOL factors] are at least relevant to, and perhaps dispositive of, the inquiry." Fraticelli v. MSG Holdings, L.P., 13 CIV. 6518 JMF, 2014 WL 1807105, at *2 (S.D.N.Y. May 7, 2014). Defendants contend that the evidence offered by Plaintiffs is not suggestive of a policy that violates Walling or the DOL test, and that the internship postings on WMG's website are "consistent with the sort of activities that are the hallmark of a bona fide internship program,

---

[3] See U.S. Dep't of Labor, "Fact Sheet #71: Internship Programs Under the Fair Labor Standards Act," available at http://www.dol.gov/whd/regs/compliance/whdfs71.pdf. The six factors are: (1) whether the internship, even though it includes actual operation of the facilities of the employer, is similar to training which would be given in an educational environment; (2) whether the internship experience is for the benefit of the intern; (3) whether the intern displaces employees or works under close supervision of staff; (4) whether the employer that provides the training derives any immediate advantage from the activities of the intern, and whether its operations on occasion may actually be impeded; (5) whether the intern is necessarily entitled to a job at the conclusion of the internship; and (6) whether the employer and the intern understand that the intern is not entitled to wages for the time spent in the internship.

such as the opportunity to 'shadow' industry professionals.'" (Def. Br. (Dkt. No. 31) at 15 (citing Ambinder Decl. (Dkt. Nos. 30-6 to 30-12), Ex. G 1-6))

Defendants' arguments do not justify denying court-authorized notice. First, for the reasons stated above, Plaintiffs have made out a prima facie case of a common FLSA violation. Plaintiffs allege that they performed the same work as non-exempt employees in their respective departments, and that they received no compensation or academic credit for their work. (See Westerkon Decl. (Dkt. No. 30-3) ¶ 9; Brieff Decl. (Dkt. No. 35-1) ¶ 9; Grubb Decl. (Dkt. No. 35-2) ¶ 8) Plaintiffs have also submitted documentary evidence that supports their claims, including internship position postings that uniformly state, "Every Intern is assigned a special project that will both assist them in increasing their understanding of how each department operates, and aid the department in addressing a business need." (Ambinder Decl. (Dkt. No. 30-5), Ex. E (emphasis added)) The evidence offered by Plaintiffs is sufficient to meet the "low" standard of proof for court-authorized notice. Myers, 624 F.3d at 555. Second, the Court is not permitted to pass on the merits of Plaintiffs' claims at this stage of the litigation. Lynch, 491 F. Supp. 2d at 368 ("[A] court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated."). An analysis of Walling or the DOL six-factor test – assuming arguendo that it applies here – would necessarily require the Court to make such determinations, and to do so on the basis of an entirely inadequate factual record.

Other courts considering FLSA claims brought by unpaid student interns have – on the basis of similar factual records – concluded that dissemination of court-authorized notice is appropriate. See Wang, 2012 WL 2864524, at *2 (authorizing notice on the basis of Plaintiff's "allegations and affidavits to the effect that Hearst made a uniform determination that interns

11

were not employees. . . ."); O'Jeda v. Viacom, Inc., 13 CIV. 5658 JMF, 2014 WL 1344604, at *1

(S.D.N.Y. Apr. 4, 2014) (authorizing notice to interns who had worked at Viacom and its

subsidiaries on the basis of, inter alia, an internship guide and internship postings on a

centralized website).

        Fraticelli v. MSG Holdings, L.P., 2014 WL 1807105, cited by Defendants (Dkt.

No. 46), is not to the contrary.  In that case, the court denied an application for court-authorized

notice due to "significant differences . . . among . . . interns in terms of the activities they

performed, the supervision, training, and benefits they received, the burdens they imposed on

[the defendant], and the manner in which they were selected for their positions." Fraticelli, 2014

WL 1807105, at *2 (internal citations omitted).  Critical to the outcome in Fraticelli, however,

was the court's conclusion that plaintiffs had presented "little to no evidence to support th[eir]

assertion" that the defendant ran a "centralized internship program." Id. at *3.  Indeed, the only

such evidence offered in Fraticelli was an employee code of conduct, a time sheet with the word

"intern" at the top, and a script that instructed interns on how to manage telephone calls. Id.

Here, in contrast, Plaintiffs have offered substantial evidence that Defendants' internship

program was highly centralized, and that all interns were subject to the same policies, regardless

of their location or the department in which they worked.

        Defendants' other arguments in opposition to Plaintiffs' motion are likewise not

persuasive.  Defendants argue that Plaintiffs have not demonstrated the existence of a national

policy, because their declarations do not include "any specific reference to any office location

outside of New York." (Def. Br. (Dkt. No. 31) at 12)  Defendants also assert that "Atlantic's

internship program is largely maintained separately from WMG's, and that even within Atlantic

and WMG respectively, interns are subject to different policies and protocols" depending on the office department and location. (Id. at 14)

Defendant's argument that Plaintiffs' declarations address only conditions in New York ignores substantial evidence proffered by Plaintiffs demonstrating that all interns who work for Defendants – regardless of the location in which they work – are subject to the same allegedly illegal policies. Defendants' contentions that interns work at locations throughout the United States, and that "disparate factual and employment settings" may exist among WMG and its subsidiaries, do not vitiate the essence of Plaintiffs' claim, which is that all of Defendants' student interns are "victims of a common policy to replace paid workers with unpaid interns." Glatt v. Fox Searchlight Pictures Inc., 293 F.R.D. 516, 538 (S.D.N.Y. 2013) on reconsideration in part, 11 CIV. 6784 WHP, 2013 WL 4834428 (S.D.N.Y. Aug. 26, 2013) and motion to certify appeal granted, 11 CIV. 6784 WHP, 2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013) (authorizing notice to interns who had worked at various affiliates of Fox Entertainment Group).

Courts routinely authorize notice in FLSA actions even where potential opt-in plaintiffs work at different locations, perform somewhat different duties, and are managed by different supervisors. See, e.g., Indergit, 2010 WL 2465488, at *5 (granting motion for court-authorized notice for collective of Rite Aid managers despite defendants' contention that managerial duties varied because of the "unique characteristics of each [Rite Aid] store"); Barry v. S.E.B. Serv. of New York, Inc., 11-CV-5089 SLT JMA, 2013 WL 6150718, at *7 (E.D.N.Y. Nov. 22, 2013) (authorizing notice to nationwide putative collective of security guards where plaintiffs only proffered evidence concerned employees located in the New York/New Jersey/Connecticut tri-state area ); Ack v. Manhattan Beer Distributors, Inc., 11-CV-5582 CBA, 2012 WL 1710985, at *6 (E.D.N.Y. May 15, 2012) (plaintiffs met conditional certification

13

burden even though sales associates worked at different locations and reported to different managers).

The issue presented by the instant motion is whether Plaintiffs and potential opt-in plaintiffs are "similarly situated . . . with respect to their allegations that the law has been violated." Young, 229 F.R.D. at 54 (emphasis added). The common denominator for Plaintiffs' claims here is that Defendants have violated, and continue to violate, the FLSA by maintaining a policy of not paying interns who perform the same or similar tasks performed by non-exempt compensated employees. Accordingly, for purposes of the instant motion, it is not material whether, for example, Grant and Westerkon performed somewhat different tasks during their internships and worked in different departments. The key inquiry is whether Defendants have a policy of not paying student interns who perform the same or similar tasks performed by non-exempt compensated employees. At this preliminary stage, Plaintiffs have proffered sufficient evidence to suggest that such a policy exists.

Defendants similarly argue that court-authorized notice is improper because "determining liability will be extremely individual and fact-intensive." (Def. Br. (Dkt. No. 31) at 16) Assuming arguendo that Defendants are correct, "'such factual determinations [are more appropriately] . . . addressed at the second stage of the certification process after the completion of discovery.'" Ack, 2012 WL 1710985, at *6 (quoting Summa v. Hofstra Univ., CV 07-3307 DRH ARL, 2008 WL 3852160, at *5 (E.D.N.Y. Aug.14, 2008)) (alteration added). If the record indicates that the opt-in plaintiffs are not similarly situated to the named plaintiffs, "the action may be 'de-certified' . . . , and the opt-in plaintiffs' claims may be dismissed without prejudice." Myers, 624 F.3d at 555. At this stage, however, it is sufficient that Plaintiffs have offered "generalized proof" that Defendants have a national policy of misclassifying interns as exempt

from wage and overtime compensation requirements. O'Jeda, 2014 WL 1344604, at *1 (quoting

Glatt, 293 F.R.D. at 537-38).

## **CONCLUSION**

For the reasons stated above, Plaintiffs' motion for court-authorized notice is

granted. The parties are directed to meet and confer as to appropriate language for notice and the

methods for its dissemination, and to jointly submit a revised copy of the proposed notice and the

proposed consent form for Court review by May 21, 2014.

The Clerk of the Court is directed to terminate the motion (Dkt. No. 28).

Dated: New York, New York                          SO ORDERED.
      May 13, 2014

Paul G. Gardephe
United States District Judge